FILED
COURT OF APPEALS
DIVISION II

2014 DEC 30 AM 9:48

STATE OF WASHINGTON

BY_____

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JEFFREY PROBST, and a class of similarly situated individuals, | No. 45128-0-II |
| Plaintiffs, | |
| MICKEY FOWLER and LEISA FOWLER, and a class of TRS 3 Plan members, | |
| Appellants, | |
| v. | |
| DEPARTMENT OF RETIREMENT SYSTEMS, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — Mickey Fowler and Leisa Fowler (the Fowlers)[1] appeal the superior court's order remanding the action to the Department of Retirement Services (DRS) based on our mandate issued in *Probst v. Department of Retirement Services.*[2] The Fowlers argue: (1) the trial court failed to comply with our mandate when it refused to calculate the interest the Fowlers were entitled to based on the common law daily interest rule and instead remanded the action to the DRS, (2) the DRS cannot retroactively apply a newly adopted rule, and (3) the DRS's retroactive

---

[1] Appellants are referred to as "the Fowlers"; some briefing refer to them as "the Teachers."

[2] *Probst v. Dep't of Ret. Sys.*, 167 Wn. App. 180, 271 P.3d 966 (2012).

application of a new rule that does not use the common law daily interest rule will result in an unconstitutional taking. Additionally, the Fowlers seek costs and a common fund attorney fee award at the conclusion of the litigation. Because the superior court properly interpreted our mandate and properly remanded the action to the DRS pursuant to the Administrative Procedure Act (APA), we affirm the superior court's order remanding the case to the DRS for further rulemaking consistent with our mandate in *Probst*.

## FACTS

This is the parties' second appeal to this court.[3] This case arises from a dispute over how the DRS calculates interest on the Public Employees Retirement Systems (PERS) and the Teachers Retirement Systems (TRS) accounts and on funds transferred between PERS/TRS Plan 2 and PERS/TRS Plan 3. The DRS stated, "[It] has set the rate of interest to be credited to PERS Plan 2 member accounts at 5.5% per year, compounded quarterly." Administrative Record (AR) at 261. The DRS credits interest on deposits to members' accounts on the fourth Saturday of the last month in each quarter.

A.     INITIAL ACTION AND FIRST APPEAL

Jeffrey Probst contacted the DRS after finding that his contributions for the last quarter before transferring to Plan 3 had not earned interest. The DRS told him that it "uses the quarter's ending balance to calculate interest, and if an account has a zero balance at the end of the quarter, it earns no interest for that quarter." *Probst*, 167 Wn. App. at 183.

---

[3] The parties do not dispute the substantive facts underlying this appeal; the substantive facts presented for context are taken from our opinion in the first appeal, the *Probst* opinion. *Probst*, 167 Wn. App. 180.

No. 45128-0-II

Probst unsuccessfully appealed the calculation methods before the DRS. *Probst*, 167 Wn. App. at 184. In his administrative appeal, Probst requested that the DRS pay interest on deposited funds from the date of deposit into Plan 2 through the date that the DRS withdrew and transferred the funds to the Plan 3 account. Probst then filed a class action suit in superior court challenging the DRS's calculation practice and sought judicial review of the DRS's decision. The administrative appeal was consolidated into the superior court action. The superior court then approved a class settlement agreement, which excluded some class members based on the date that they transferred from Plan 2 to Plan 3. The settlement agreement provided that excluded proposed additional class members' claims may still be brought against the DRS.

The Fowlers, who were part of the proposed additional class, filed an amended complaint. The superior court dismissed the claims; the Fowlers appealed to this court.

We reviewed the DRS order pursuant to the APA, and ultimately reversed and remanded the case. *Probst*, 167 Wn. App. at 185, 194. We found that "although the DRS had authority to decide how to calculate interest," its method "was arbitrary and capricious because the agency did not render a decision after due consideration." *Probst*, 167 Wn. App. at 183. Additionally, we held that the "statutes do not require the DRS to pay daily interest" and that the legislature had abrogated the common law daily interest rule. *Probst*, 167 Wn. App. at 191. We declined to address the Fowlers' unconstitutional takings argument because we were able to decide the case based on the APA. *Probst*, 167 Wn. App. at 183 n.1. We remanded the case and later issued a mandate for further proceedings in accordance with our opinion.

3

## B. REMAND AND CURRENT APPEAL

On remand to the superior court, the Fowlers argued that our opinion required that judgment be entered in their favor and required the DRS to pay daily interest. The superior court disagreed and remanded the action to the DRS under the APA for proceedings consistent with our opinion in *Probst*. The superior court signed the order remanding the action to the DRS on June 20, 2013.

On July 22, 2013, the Fowlers filed a motion to recall the mandate in *Probst* and to require compliance under RAP 12.9. In the Fowlers' motion to recall, they argued that the superior court failed to comply with our mandate issued in *Probst* by remanding the action to the DRS for rulemaking under the APA instead of determining the interest itself. The Fowlers also argued that our opinion held the DRS's failure to pay daily interest was arbitrary and capricious. The Fowlers argued, alternatively, that if the superior court was correct, then their constitutional claims are unresolved and they have the right to again appeal our decision in *Probst*. In August 2013, we denied the Fowlers' motion.

Also on July 22, 2013, the Fowlers appealed the superior court's order remanding the action to the DRS. The Fowlers make the same arguments in their appeal as they made in their motion to recall the mandate.

## ANALYSIS

The Fowlers argue that the superior court did not comply with our mandate when it remanded the action to the DRS instead of ordering the DRS to pay the Fowlers interest based on the common law daily interest rule. Next, the Fowlers argue that if the DRS is allowed to make a

4

new rule determining the interest calculation method, it will improperly apply it retroactively. The Fowlers further argue that an unconstitutional taking will likely result if the DRS is permitted to calculate interest by not using the common law daily interest method.

Whether the superior court properly implemented our mandate in *Probst* is the only issue properly before us. The superior court did not abuse its discretion by remanding the action to the DRS under the APA based on our opinion. As discussed below, the other issues are not properly before us. Accordingly, we affirm the superior court's order remanding the case to the DRS for further rulemaking consistent with our opinion in *Probst*.

## A.    MOTION TO RECALL MANDATE AND EFFECT ON APPEAL

As an initial matter, the DRS argues that the Fowlers are precluded from appealing the superior court's order because they previously filed a motion to recall the mandate making the same arguments being made in this appeal, and we have already ruled on the matter. The Fowlers argue that their motion to recall was an opportunity for this court to exercise discretionary review, while this appeal automatically gives us jurisdiction and is a separate review of the lower court's post-mandate decision.

An "appellate court may recall a mandate issued by it to determine if the trial court has complied with an earlier decision of the appellate court given in the same case." RAP 12.9. Rule 12.9(a) gives an appellant two choices.

> (a) **To Require Compliance With Decision.** The appellate court may recall a mandate issued by it to determine if the trial court has complied with an earlier decision of the appellate court given in the same case. The question of compliance by the trial court may be raised by motion to recall the mandate, or by initiating a separate review of the lower court decision entered after issuance of the mandate.

Rule 12.9 clearly contains the disjunctive conjunction "or." The disjunctive "or" signals a choice of methods for litigants. Here, the Fowlers are using both methods to present the same issues. On July 22, 2013, the Fowlers filed both a motion to recall the mandate and a notice of appeal, raising the same arguments in both.

We "considered" the motion to recall, which raised the same arguments as in the appeal, and denied the motion. Specifically, we ruled: "Upon consideration by the court, the motion is denied." Order Denying Mot. to Recall Mandate, No. 40861-9-II (Aug. 1, 2013). Thus, we have already decided the issues in this appeal when we denied the motion to recall after consideration. The Fowlers are not entitled to a second review of the same issues with a different panel. *Reeploeg v. Jensen*, 81 Wn.2d 541, 546, 503 P.2d 99 (1972) (noting that to "require courts to consider and reconsider cases at the will of litigants would deprive the courts of that stability which is necessary in the administration of justice").

We do not approve of a party manipulating procedural rules in order to relitigate issues that have been previously resolved by this court. However, because of the particular circumstances of this case, we exercise our discretion to address the merits of the Fowlers' arguments. RAP 1.2(a), (c).

B.     THE *PROBST* DECISION

We apply the law of the case doctrine "'to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts.'" *State v. Harrison*, 148 Wn.2d 550, 562, 61 P.3d 1104 (2003) (quoting 5 AM. JUR. 2d Appellate Review § 605 (2d ed.1995)). "Once an appellate court issues its mandate, the

court's decision becomes 'effective and binding on the parties' and 'governs all subsequent proceedings in the action in any court.'" *State v. Strauss,* 93 Wn. App. 691, 697, 969 P.2d 529 (1999); RAP 12.2.

When the appellate court issues a directive that leaves no discretion to the lower court, the lower court must comply. *Harp v. Am. Sur. Co. of N.Y.,* 50 Wn.2d 365, 368, 311 P.2d 988 (1957). "[A] remand 'for further proceedings' 'signals this court's expectation that the trial court will exercise its discretion to decide any issue necessary to resolve the case." *Bank of Am., N.A. v. Owens,* 177 Wn. App. 181, 189, 311 P.3d 594 (2013), *review denied,* 179 Wn.2d 1027 (2014) (citing *In re Marriage of Rockwell,* 157 Wn. App. 449, 453, 238 P.3d 1184 (2010)); *McCausland v. McCausland,* 129 Wn. App. 390, 400, 118 P.3d 944 (2005), *rev'd,* 159 Wn.2d 607, 152 P.3d 1013 (2007)). When a mandate merely remands for further proceedings, compliance with that mandate is reviewed for an abuse of discretion. *State v. Kilgore,* 167 Wn.2d 28, 34, 42-43, 216 P.3d 393 (2009) (finding that the trial court did not abuse its discretion following remand for further proceedings); *see Rockwell,* 157 Wn. App. at 454 (reviewing the trial court record to determine whether it exercised its discretion on remand, noting that it "intended that the trial court exercise its discretion on remand").

In *Probst,* we reversed the superior court's original order and remanded the case for further proceedings consistent with the opinion, intending for the trial court to exercise its discretion. Specifically, the mandate stated, "this cause is mandated to the Superior Court from which the appeal was taken for further proceedings in accordance with the attached true copy of the opinion." Clerk's Papers at 5. Thus, on remand, we review the superior court's decisions for an abuse of discretion. *Rockwell,* 157 Wn. App. at 454; *see also Kilgore,* 167 Wn.2d at 43.

7

The crux of the Fowlers' argument seems to be that when we said "although the DRS had authority to decide how to calculate interest, the DRS's interest calculation method was arbitrary and capricious because the agency did not render a decision after due consideration" and "the . . . statutes do not require the DRS to pay daily interest," *Probst*, 167 Wn. App. at 183, 191, we actually meant: the DRS's "failure to pay daily interest was arbitrary and capricious," and the "DRS is required to pay daily interest." Mot. Hearing Transcript (MHT) at 7. The Fowlers assert that the DRS's "argument that daily interest is not required is contrary to the express language in the opinion." MHT at 7.

The Fowlers misconstrue our holding in *Probst*. In *Probst*, we stated, "We hold that the TRS statutes do not require the DRS to pay daily interest on balances transferred from Plan 2 to Plan 3." *Probst*, 167 Wn. App. at 191. We also held that "the legislature has clearly expressed its intent to give the DRS authority to determine how interest is earned." *Probst*, 167 Wn. App. at 190. Thus, the DRS had the authority to determine how interest is calculated. However, in exercising that authority, we found that the DRS acted arbitrarily and capriciously by electing to continue using a "historical interest calculation method without due consideration of the facts and circumstances" and without identifying the reasons for continuing to do so, even when the DRS consistently recognized the historical method did not conform to industry standards and was unfair. *Probst*, 167 Wn. App. at 193-94. Therefore, contrary to the Fowlers' assertion, we held that the DRS acted arbitrarily and capriciously by not giving due consideration to the facts and circumstances when it elected to continue the historical method of calculating interest; we did not hold that the DRS was required to pay daily interest.

On remand, the superior court found that "it's not up to [the superior court] to determine what an agency should or shouldn't do" and that it is not appropriate for it to "set interest rates . . . when there is an agency who is given that discretion." MHT at 15, 18. It went on to say that finding that the DRS's method was arbitrary and capricious "is not the same thing as saying [the calculations] ha[ve] to be done a particular way." MHT at 18-19. The superior court correctly interpreted our mandate to say that the DRS has the authority to determine how to calculate interest, but it must undergo the appropriate processes. It follows that it is reasonable to remand to the DRS to allow it to undergo the appropriate processes to exercise its authority.[4] The superior court did not abuse its discretion.

The Fowlers also argue that the superior court improperly relied on the APA when it remanded the action to the DRS because their claim falls under an exception to the APA. The Fowlers' argument is without merit.

The Fowlers assert that RCW 34.05.510 excludes their claim from the APA because their claim involves money damages. This assertion is based on an incomplete reading of the statute. RCW 34.05.510 states:

> This chapter establishes the exclusive means of judicial review of agency action, except:

---

[4] Under the APA, "[t]he court shall remand to the agency for modification of agency action, unless remand is impracticable or would cause unnecessary delay." RCW 34.05.574(1). Courts substantially defer to the agency and do not substitute its opinion "for that of the agency entrusted to make such decisions." *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 396, 932 P.2d 139 (1997). In *Hillis*, the court invalidated the agency's decision that was made without appropriate rule making. 131 Wn.2d at 400. The *Hillis* court found that it "is not for the courts to make the decision or set the priorities for the agency," and "[o]n remand, it is within the discretion of the agency what specific procedures" to use after an agency decision has been invalidated. *Hillis*, 131 Wn.2d at 400.

> (1) The provisions of this chapter for judicial review do not apply to litigation in which the sole issue is a claim for money damages or compensation and the agency whose action is at issue does not have statutory authority to determine the claim.
>
> (2) Ancillary procedural matters before the reviewing court, including intervention, class actions, consolidation, joinder, severance, transfer, protective orders, and other relief from disclosure of privileged or confidential material, are governed, to the extent not inconsistent with this chapter, by court rule.

RCW 34.05.510(1), (2). Thus, the APA does not govern "litigation in which the sole issue is a claim for money damages or compensation *and* the agency whose action is at issue does not have statutory authority to determine the claim." RCW 34.05.510(1) (emphasis added).

Also, Washington courts have consistently held that RCW 34.05.510(1) applies only to suits in which the sole issue is a claim for money damages. For example, in *Wells Fargo*, the court found that because appellant's "complaint contained a request for a declaratory judgment. . . its action did not fit within the exception for suits limited to money damages." *Wells Fargo Bank, N.A. v. Dep't of Revenue*, 166 Wn. App. 342, 353, 271 P.3d 268, *review denied*, 175 Wn.2d 1009 (2012).

In their first appeal, "[t]he Fowlers sought declaratory and/or equitable relief, monetary relief, prejudgment interest, and attorney fees." *Probst*, 167 Wn. App. at 184. Here, in their second appeal, they seek enforcement of the mandate based on that prior appeal; the Fowlers have not offered any evidence or argument that this is now solely a claim for money damages.

The superior court correctly ruled that the APA applied to the case and properly remanded the action to the DRS for proceedings consistent with our opinion in *Probst*. The Fowlers' argument that the superior court erred by remanding the action is not supported by law.

C.   RETROACTIVE APPLICATION AND UNCONSTITUTIONAL TAKINGS

The Fowlers argue that if the DRS enacts a new rule adopting the original interest calculation methods under the authority of RCW 41.50.033, the new rule could not be retroactively applied because it would interfere with their vested rights. However, the DRS has not yet had the opportunity to make such a rule. Therefore, this argument is premature and is not ripe for review.

Washington law has long established that courts are not "authorized to render advisory opinions or pronouncements upon abstract or speculative questions under the declaratory judgment act." *Wash. Beauty Coll., Inc. v. Huse*, 195 Wash. 160, 164, 80 P.2d 403 (1938); *see Kitsap County Prosecuting Attorney's Guild v. Kitsap County*, 156 Wn. App. 110, 122, 231 P.3d 219 (2010) (noting that this court does not give advisory opinions). To be justiciable, "the interests must be direct and substantial and involve an actual as distinguished from a possible or potential dispute." *Huse*, 195 Wash. at 164-65. The Fowlers ask us to ignore the fact that the DRS has not yet had the opportunity to resolve this issue, and therefore, there is no rule to be retroactively applied. Their argument is speculative; we do not render advisory opinions. *Huse*, 195 Wash. at 164-65.

The Fowlers also argue that if the DRS is allowed under RCW 41.50.033 to make and apply a new rule that does not use the common law daily interest rule to calculate interest, the potential failure to pay interest based on that rule will result in an unconstitutional taking. Pursuant to the takings clause of the Fifth Amendment and applied to the states through the Fourteenth Amendment, the government cannot take private property for public use without just compensation. U.S. CONST., amend. V. This argument is also speculative because the DRS has not made or applied a new rule resulting in an unconstitutional taking; therefore, this argument is premature. We do not render advisory opinions. *Huse*, 195 Wash. at 164-65.

ATTORNEY FEES AND COSTS

The Fowlers seek attorney fees pursuant to the common fund doctrine. Under the American rule, which Washington follows, attorney fees must be authorized by contract, statute, or a recognized equitable principal. *City of Seattle v. McCready,* 131 Wn.2d 266, 273-74, 931 P.2d 156 (1997). Whether an equitable exception authorizes an award of attorney fees is a legal question. *Tradewell Group, Inc. v. Mavis,* 71 Wn. App. 120, 126, 857 P.2d 1053 (1993). The Washington Supreme Court found that "the 'common fund/common benefit' theory" is a "narrow equitable ground for awarding attorney fees." *City of Sequim v. Malkasian,* 157 Wn.2d 251, 271, 138 P.3d 943 (2006).

In order to award attorney fees based on the common fund doctrine, a court has to determine whether the Fowlers' litigation benefited the class and others. *Malkasian,* 157 Wn.2d at 271. A court then grants the award based on the size of the judgment. *Bowles v. Dep't of Ret. Sys.,* 121 Wn.2d 52, 75, 847 P.2d 440 (1993). Until the end of litigation, there is no basis to determine whether the award of attorney fees is appropriate. Furthermore, the Fowlers themselves note that the fee award "awaits the conclusion of this litigation." Br. of Appellant at 46.[5] Accordingly, the request for attorney fees from this court is premature.

The Fowlers also request costs on appeal. RAP 14.1 and 14.2 provide that the clerk of the appellate court will award costs to the substantially prevailing party. Here, the Fowlers are not the prevailing party. Accordingly, the Fowlers' request for costs on appeal is denied.

---

[5] We recognize that the Fowlers, in an abundance of caution, are preserving their right to claim attorney fees pursuant to the common fund doctrine; however, for the reasons stated above, we do not decide this issue.

No. 45128-0-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Worswick, P.J.

_____
Maxa, J.