IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | |
| | ) | No.  37955-8-III |
| DALLIN D. FORT, | ) | |
| | ) | UNPUBLISHED OPINION |
| Petitioner. | ) | |
| | ) | |

SIDDOWAY, J. — Dallin Fort is currently released on community custody, serving an indeterminate sentence of 120 months to life following two convictions for first degree rape of a child.  He seeks relief from personal restraint in the form of one condition of community custody imposed in his judgment and sentence and two conditions imposed by the Indeterminate Sentence Review Board (ISRB).

We grant his requested relief in part, by remanding to the superior court to strike from his judgment and sentence a condition that he obtain a substance abuse evaluation

No. 37955-8-III
*In re Pers. Restraint of Fort*

and follow all recommended treatment. We deny his challenges to UA/BA[1] and Internet

monitoring conditions imposed by the ISRB.[2]

PROCEDURAL BACKGROUND

Dallin Fort was convicted in 2006 of two counts of first degree rape of a child,

committed in 2003 against his then-9-year-old niece. He appealed, and this court

affirmed his convictions while remanding for resentencing. *State v. Fort*, noted at 140

Wn. App. 1023 (2007), 2007 WL 2476003 (*Fort* I).

In 2007, Mr. Fort, relying on developments in case law dealing with the public

trial right, filed a personal restraint petition (PRP) that was stayed for years but ultimately

led this court to order a new trial. *See State v. Fort*, 190 Wn. App. 202, 211-14, 360 P.3d

820 (2015), *review denied*, 185 Wn.2d 1011 (2016) (*Fort* II).

In 2016, Mr. Fort's second trial ended in a mistrial when jurors were unable to

reach a verdict. *See State v. Fort*, No. 35412-1-III (Wash. Ct. App. Oct. 29, 2019)

(unpublished), https://www.courts.wa.gov/opinions /pdf/354121_unp.pdf (*Fort* III).

---

[1] Urinalysis/Breathalyzer.

[2] In a motion filed after his petition had been set for hearing without oral argument, Mr. Fort seeks leave to amend his petition with a challenge to a new Internet monitoring condition. By his own admission, the record would have to be supplemented and briefing would have to begin anew to address the new condition.
　　We deny the motion. Mr. Fort's challenge was addressed first and foremost to whether the ISRB was authorized to impose an Internet monitoring condition at all, and it is that issue we address in this opinion. That issue is not rendered moot by the ISRB's imposing a different Internet monitoring condition.

2

In a third trial taking place in 2017, the jury again found Mr. Fort guilty of two counts of first degree rape of a child. He received an indeterminate sentence of 120 months to life, and community custody was ordered "for any period of time the defendant is released from total confinement before the expiration of the maximum sentence." Resp. of ISRB, Ex. 1.A at 7.[3]

In a timely appeal, Mr. Fort raised a double jeopardy challenge and, as relevant to the current petition, challenged three community custody conditions imposed by his judgment and sentence: conditions 20, 21, and 23. Br. of Appellant at 1-2, *State v. Fort*, No. 35412-1-III (Wash. Ct. App. Feb. 9, 2018) (available from the court). The challenged conditions provided:

> Defendant shall comply with the following other conditions during the term of community placement / custody:
>
> . . . .
>
> (20) That you obtain a written substance abuse evaluation with a qualified provider approved by your assigned community corrections officer and complete all recommended treatment including attending AA and/or NA support groups and obtaining a sponsor.
>
> (21) That you do not possess or consume alcohol nor go to places where alcohol is the chief commodity for sale.
>
> (23) That you submit to random UA/BA monitoring as directed by your assigned community corrections officer.

Resp. of ISRB, Ex. 1.E at 2-3.

---

[3] The response to the PRP filed by the ISRB includes as its exhibit 1 a declaration authenticating 12 attachments, A through L. We refer to the attachments using a shorthand identification: Ex. 1.A, 1.B, 1.C, and so on.

In its 2019 opinion in *Fort* III, this court affirmed the condition that Mr. Fort not consume alcohol, pointing out that the condition was statutorily authorized regardless of whether alcohol contributed to a defendant's offense. *Fort* III, slip op. at 7-8 & n.3. This court held that the trial court erred in ordering the remainder of condition 21 and conditions 20 and 23, since "the trial court did not make a finding that alcohol or any other drug contributed to Mr. Fort's crime, his risk of reoffending, or the safety of the community." *Id.* at 9. It remanded with directions to strike the erroneously-imposed conditions. *Id.* at 11. The State had argued that the ISRB and Department of Corrections (DOC) enjoyed statutory authority to impose conditions of their own and this court's opinion stated, with respect to that argument, "We express no opinion on the propriety of conditions the Board or the DOC may impose." *Id.* at 7.

Following issuance of the mandate, in June 2020, the trial court modified condition 21 by striking the condition that Mr. Fort not possess alcohol or go to places where alcohol is the chief commodity for sale. Resp. of ISRB, Ex. 1.F at 1. It struck condition 23 in its entirety. *Id.* It did not strike condition 20, however. *Id.*

By the time *Fort* III was decided and the judgment and sentence was later modified, Mr. Fort had been released from confinement. The ISRB had found him

4

eligible for release from total confinement at his second release hearing, conducted in 2018. Resp. of ISRB, Ex. 1.B, 1.C.[4]

The ISRB ordered Mr. Fort conditionally released to community custody supervision on November 13, 2018. Resp. of ISRB, Ex. 1.C at 1. His order of release and supervision conditions stated that while on community custody, he was required to comply not only with the court-ordered conditions of his judgment and sentence, but also with the conditions set forth in the order. Resp. of ISRB, Ex. 1.C at 1. Among the conditions it imposed was the following Internet monitoring condition:

> D. You must not access the internet without developing a written safety plan approved by your CCO[5] and sexual deviancy therapist and installing any special equipment on your computer required by your CCO as a part of your safety plan. **You must also complete DOC Form 02-404 Community Sex Offender Treatment and Assessment Program Electronic Media Use Agreement. A copy of the signed form and any written internet safety plan must be provided to the ISRB. This form will remain in effect unless removed by the CCO and the ISRB.**

*Id.* at 2. The order stated that to request a change to any of the conditions of release, "you must write and have the approval of the Spokane County Superior Court for Court ordered conditions or the ISRB for all other conditions." *Id.* at 1.

In January 2019, Mr. Fort wrote the ISRB to request relief from the Internet monitoring condition. Resp. of ISRB, Ex. 1.J at 4. He argued the condition was not

---

[4] It was Mr. Fort's first release hearing following his 2017 reconviction. He had received an earlier release hearing in 2014.

[5] Community corrections officer.

crime related, treatment related, or necessary for public safety. *Id.* He also objected that the software he was being required to use was inaccurate, was superfluous and a waste of resources, caused problems with his employment, and was a financial burden. *Id.* at 4-5. In a hearing investigator's write-up and recommendation, she stated that while Mr. Fort complained about the Covenant Eyes software his CCO had directed him to install on his electronic devices, she had "not received complaints about the Covenant Eyes software from other CCOs or offenders." *Id.* at 2. She surmised from her review of the ISRB's consideration of Mr. Fort's release that the Internet monitoring condition was imposed because Mr. Fort's victim reported that Mr. Fort had made her watch adult videos and bribed her sisters with video games. *Id.* at 3. The ISRB denied Mr. Fort's request to strike the condition, stating, "[t]his condition is risk related." *Id.* at 1.

In June 2020, ISRB personnel received a copy of the superior court's order modifying Mr. Fort's judgment and sentence to comply with this court's 2019 opinion. The fact that the UA/BA monitoring had been struck triggered a request that the ISRB impose its own UA/BA monitoring condition. Resp. of ISRB, Ex. 1.L at 2.

The ISRB imposed such a condition,[6] and Mr. Fort promptly appealed, complaining that this court had already held such a condition to be unlawful because it

_____

[6] The condition stated, "You must submit to periodic and random drug and/or alcohol monitoring through an agency approved by your CCO and sign a full release of information allowing the treatment or monitoring agency to release information to your CCO." Resp. of ISRB, Ex. 1.K at 1.

was not related to his crime, his risk of reoffending, or the safety of the community.

Resp. of ISRB, Ex. 1.L at 4. The appeal was denied with the explanation that the only

way DOC could monitor Mr. Fort's compliance with conditions forbidding alcohol

consumption and use of nonprescribed controlled substances was with UA/BA

monitoring. *Id.* at 1. In the hearing investigator's write-up and recommendation for the

appeal, she observed that "imposing a UA/BA condition is something the Board does

routinely if the condition is not imposed in the Judgment and Sentence." *Id.* at 2.

In January 2021, Mr. Fort filed the present PRP, challenging the superior court's

failure to comply with this court's mandate, and ISRB's UA/BA and electronic

monitoring conditions. Responses were requested and obtained from the ISRB and the

Spokane County prosecuting attorney. The petition was referred to a panel, which

considered the petition without oral argument.

ANALYSIS

In order to prevail on a collateral attack by way of a PRP, a petitioner generally

must first establish that a constitutional error has resulted in actual and substantial

prejudice, or that a nonconstitutional error has resulted in a fundamental defect that

inherently results in a complete miscarriage of justice. *See In re Pers. Restraint of Cook*,

114 Wn.2d 802, 810, 812, 792 P.2d 506 (1990)). These threshold requirements are

justified by the court's interest in finality, economy, and integrity of the trial process and

by the fact that the petitioner has already had an opportunity for judicial review. *In re*

*Pers. Restraint of Isadore*, 151 Wn.2d 294, 298-99, 88 P.3d 390 (2004) (citing *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 148-49, 866 P.2d 8 (1994)). When the petitioner has *not* had a prior opportunity for judicial review, as is the case with Mr. Fort's challenges to actions of the ISRB, we do not apply the heightened threshold requirements applicable to PRPs. With respect to those sorts of challenges, the petitioner need show only that he is restrained under RAP 16.4(b) and that the restraint is unlawful under RAP 16.4(c). *Id.*

A petitioner is under restraint if he or she has limited freedom because of a court decision in a civil or criminal proceeding, the petitioner is confined, the petitioner is subject to immediate confinement, or the petitioner is under some other disability resulting from a judgment or sentence in a criminal case. RAP 16.4(b). A petitioner who is subject to community custody conditions that limit his freedom is under restraint. *In re Pers. Restraint of Martinez*, 2 Wn. App. 2d 904, 909-10, 413 P.3d 1043 (2018), *abrogated on other grounds by In re Pers. Restraint of Winton*, 196 Wn.2d 270, 474 P.3d 532 (2020). Mr. Fort claims he is unlawfully restrained by condition 20 of his judgment and sentence because it remains in effect notwithstanding this court's 2019 directive that it be struck. He claims he is unlawfully restrained by the ISRB's Internet-monitoring condition and its supplemental condition requiring random UA/BA testing because they are not related to his crime of conviction, his risk to reoffend, or the safety of the community. His last request for relief is that the superior court be ordered to refund $300

he claims to have paid toward deoxyribonucleic acid (DNA) collection and criminal filing fees that this court ordered be struck on remand.

The terms of a defendant's sentence are governed by the version of the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, in effect when the crime was committed. *State v. McClinton*, 186 Wn. App. 826, 829, 347 P.3d 889 (2015) (citing *State v. Medina*, 180 Wn.2d 282, 287, 324 P.3d 682 (2014)). Mr. Fort's crimes were committed between June 1, 2003 and September 1, 2003. Resp. of ISRB Ex. 1.A at 2. Our citations to the SRA refer to the version in effect at that time.

We turn first to the superior court's alleged failure to comply with our mandate.

I.      ALLEGED FAILURE TO COMPLY WITH THE MANDATE: CONDITION 20 AND DNA AND CRIMINAL FILING FEES

Addressing condition 20 of Mr. Fort's 2017 judgment and sentence—that he obtain a written substance abuse evaluation by a provider approved by his CCO and complete all recommended treatment—this court held in *Fort* III that it was error for the trial court to impose the condition because it made no finding that alcohol or other drugs contributed to his crime, the risk of reoffending, or the safety of the community. *Fort* III, slip op. at 9. Following that decision and issuance of the mandate, Mr. Fort challenges the unmodified inclusion of condition 20 in his judgment and sentence as unlawful because it constituted a failure by the trial court to carry out this court's directive.

9

A condition of a petitioner's restraint is unlawful if it is in violation of the laws of the State of Washington. RAP 16.4(c)(6). An appellate court's mandate is binding on the lower court and must be strictly followed; the trial court may not ignore the appellate court's specific holdings and directions on remand. *Bank of Am., N.A. v. Owens*, 177 Wn. App. 181, 189, 311 P.3d 594 (2013). The principle is reflected in RAP 12.2's dictate that "[u]pon issuance of the mandate of the appellate court as provided in [RAP] 12.5, the action taken or decision made by the appellate court is effective and binding on the parties to the review and governs all subsequent proceedings in the action in any court."

The State concedes in its response that the trial court's June 2020 order modifying Mr. Fort's 2017 judgment and sentence did not fully comply with this court's mandate because it failed to strike condition 20, and agrees that remand is necessary for the trial court to strike the condition. Resp. to PRP at 2, 5. We grant Mr. Fort's requested relief that we remand with directions to the trial court to strike condition 20 from the 2017 judgment and sentence.

In *Fort* III, we also ordered the trial court to strike the $100 DNA collection fee and the $200 criminal filing fee. *Fort* III, slip op. at 10-11. The trial court complied. Resp. of ISRB, Ex. 1.F. Mr. Fort asks us to order reimbursement of $300 that he claims to have paid before those fees were struck. But reimbursement of amounts improperly collected is beyond the scope of a PRP; this court can order only the removal of the

10

illegal restraint, which it has done. *In re Pers. Restraint of Sappenfield*, 138 Wn.2d 588, 595, 980 P.2d 1271 (1999). If Mr. Fort has overpaid his legal financial obligations, he will have to pursue other avenues of relief. *Id.*

Finally, in his reply brief, Mr. Fort challenges other conditions of his judgment and sentence as contravening this court's mandate—arguably conditions 3, 21 (as modified), 22, and 24. RAP 10.3(c) requires a reply brief "be limited to a response to the issues in the brief to which the reply brief is directed." We may decline to consider arguments raised for the first time in a reply brief, to which the ISRB and State have not had a chance to respond. *In re Pers. Restraint of Sickels*, 14 Wn. App. 2d 51, 59, 469 P.3d 322 (2020); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

In any event, none of these conditions violates the mandate. With the exception of the restriction that remains in modified condition 21, the conditions were not challenged in Mr. Fort's direct appeal and were never addressed in this court's opinion, let alone ordered struck. And this court held that the prohibition on consuming alcohol in what remains of condition 21 was lawful. We decline to address the conditions further.

II.     ISRB INTERNET MONITORING AND UA/BA CONDITIONS

Mr. Fort's remaining challenges are to conditions imposed by the ISRB: the Internet monitoring condition imposed at the time of his release from confinement and the random UA/BA monitoring condition imposed after the trial court struck a similar

condition from his judgment and sentence. As earlier explained, because these challenges have not been subject to prior judicial review, Mr. Fort must demonstrate, in order to be entitled to relief, only that he is subject to unlawful restraint. RAP 16.4(b), (c).

The ISRB may impose additional or modified conditions of community custody based on the risk to community safety. Former RCW 9.94A.713(1) (2001). It may require the offender to participate in rehabilitative programs, otherwise perform affirmative conduct, and obey all laws. *Id.* If challenged by the offender under agency rules, the condition shall remain in effect unless it is found not to be reasonably related to the crime of conviction, the offender's risk of reoffending, or the safety of the community. Former RCW 9.94A.713(5) (2001).

During a period of community custody, an individual's constitutional rights are subject to the infringements authorized by the SRA. *Winton*, 196 Wn.2d at 275 (citing *State v. Ross*, 129 Wn.2d 279, 287, 916 P.2d 405 (1996)). "Limitations upon fundamental rights are permissible" for the duration of the offender's sentence where restrictions are "imposed sensitively . . . [and are] 'reasonably necessary to accomplish the essential needs of the state and public order.'" *State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993) (quoting *Malone v. United States*, 502 F.2d 554, 556 (9th Cir. 1974)). We review community custody conditions for abuse of discretion. *State v.*

12

*Johnson*, 197 Wn.2d 740, 744, 487 P.3d 893 (2021) (citing *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008)).

    A.    *The Internet monitoring condition*

Mr. Fort's primary challenge to the Internet monitoring condition is that it is not crime related—he disputes the position taken by the ISRB that his crimes involved having his victim watch adult videos. The ISRB points out that this finding was made without challenge at both of his release hearings, however. As the petitioner, Mr. Fort has the burden to provide evidence to support his argument. *In re Pers. Restraint of Khan*, 184 Wn.2d 679, 686-87, 363 P.3d 577 (2015). Mr. Fort's argument that adult videos are not exclusively available over the Internet is unpersuasive; it is enough that the Internet is an obvious and ready means of acquiring them.

Moreover, in defending the condition on appeal, the ISRB defends it as "best described" as a condition for monitoring other conditions of Mr. Fort's release: conditions that prohibit unsupervised and unapproved contact with minor females and prohibit his access to sexually explicit material. Resp. of ISRB at 22-23. This is consistent with the ISRB's position taken in refusing to remove the condition: that it is risk related. The ISRB cites *McClinton* for the proposition that "[i]f there were no way to monitor an offender's compliance with the conditions of community custody, the imposition of such conditions would be meaningless." 186 Wn. App. at 835. It argues that without monitoring, the Internet "affords would-be child abusers a very convenient

work-around" to conditions that require supervised interactions with children and no
possession or access to sexually explicit content. Resp. of ISRB at 23.[7]

A condition that a sex offender not "possess, use, access or view any sexually
explicit material" was upheld as constitutional in *State v. Hai Minh Nguyen*, 191 Wn.2d
671, 679-81, 425 P.3d 847 (2018). It was also held to be crime related in the case of
Nguyen, whose crimes of child molestation and child rape were committed against a
young girl in his household who referred to him as "uncle," with no direct causal
connection to sexually explicit materials. *Id.* at 676, 685. As the court explained,

> Nguyen committed sex crimes and, in doing so, established his inability to
> control his sexual urges. It is both logical and reasonable to conclude that a
> convicted person who cannot suppress sexual urges should be prohibited
> from accessing "sexually explicit materials," the only purpose of which is
> to invoke sexual stimulation.

---

[7] The ISRB makes a threshold argument that Mr. Fort's challenge to the Internet
monitoring provision is time barred. Resp. of ISRB at 18-19. Relying on *In re Pers.
Restraint of Heck*, 14 Wn. App. 2d 335, 340-41, 470 P.3d 539 (2020), it argues that the
two year "catchall" statute of limitations provided by RCW 4.16.130 applies, and that any
challenge to the condition became time barred on October 11, 2020, two years after Mr.
Fort signed the order of release. *Heck* was a challenge to a disciplinary sanction.

Assuming the catchall statute of limitations applies to conditions of release, it is
not clear if Mr. Fort's petition is time barred or the limitations period was tolled. While
condition D was imposed at the time of Mr. Fort's conditional release, he requested its
removal in January 2019, and the ISRB entertained the request. We will ordinarily only
grant relief by a PRP if other remedies that may be available to the petitioner are
inadequate under the circumstances. RAP 16.4(d).

The IRSB denied the request to remove the condition on January 24, 2019. Mr.
Fort then filed this PRP on January 19, 2021, within two years of denial of the request.
Because we can decide this challenge on the merits, we decline to address a time bar
issue that would benefit from additional briefing.

*Id.* at 686.

In *Johnson*, the Washington Supreme Court considered a First Amendment to the United States Constitution challenge to a community custody condition that required Johnson's use or access to the World Wide Web to be authorized by his CCO "through approved filters." 197 Wn.2d at 744. It contrasted monitoring using filters, which can be reasonable, with making Internet use discretionary with a CCO or making social media sites entirely off limits, which is not. It explained:

> A proper filter restricting [Johnson's] ability to use the Internet to solicit children or commercial sexual activity will reduce the chance he will recidivate and will also protect the public. While a blanket ban might well reduce his ability to improve himself, a properly chosen filter should not. We encourage Johnson's future community [corrections] officer to have a meaningful conversation with Johnson about appropriate Internet use and to choose filters that will accommodate Johnson's legitimate needs.

*Id.* at 745-46. The court in *Johnson* observed that the United States Supreme Court, which had struck down a statute prohibiting sex offenders from accessing social networking websites in *Packingham v. North Carolina*, __ U.S. __, 137 S. Ct. 1730, 1735, 198 L. Ed. 2d 273 (2017), had "noted that a more narrowly tailored restriction might well survive constitutional scrutiny." 197 Wn.2d at 746. It quoted the following language:

> "[I]t can be assumed that the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor. . . . Specific laws of that type must be the State's first resort to ward off the serious harm that sexual crimes inflict."

15

*Id.* (quoting *Packingham*, 137 S. Ct. at 1737).

Given the ISRB's findings that Mr. Fort made his young victim watch adult videos and its interest in monitoring his compliance with conditions regulating his contact with minors and prohibiting him from possessing or accessing sexually explicit materials, it did not abuse its discretion in imposing an Internet monitoring condition.

B.      *The ISRB's UA/BA monitoring condition*

Finally, Mr. Fort challenges the ISRB's imposition of the supplemental condition requiring UA/BA monitoring, on the grounds it is foreclosed by our decision in *Fort* III. *Fort* III concluded the trial court could not order UA/BA monitoring because the condition did not meet the requirements of "crime-related prohibition" under former RCW 9.94A.030(12) (2002). Slip op. at 8-9. The opinion did not address whether it addressed a risk to community safety.

As outlined above, the ISRB has authority to impose "additional or modified conditions of the offender's community custody based upon the risk to community safety," including requiring an offender to "perform affirmative conduct." Former RCW 9.94A.713(1) (2001). This court acknowledged its authority and "express[ed] no opinion on the propriety of conditions the Board or the DOC may impose." *Fort* III, slip op. at 7. As the ISRB notes, urinalyses have been classified as monitoring tools rather than actual conditions of community placement, which can be imposed to enforce other lawful conditions. *State v. Julian*, 102 Wn. App. 296, 305, 9 P.3d 851 (2000).

The ISRB may not impose conditions that are contrary to those ordered by the court or that would contravene or decrease court-imposed conditions. Former RCW 9.94A.713(2) (2001). It must comply with this court's mandate. Its imposition of its own monitoring condition does not contravene or decrease any court-ordered condition. It does not violate this court's mandate because *Fort* III did not address whether such a condition could be imposed under former RCW 9.94A.713(5) as reasonably related to the safety of the community. If *Fort* III can be construed as implicitly holding that a UA/BA monitoring condition *cannot* be imposed for community safety purposes, we exercise our discretion to decide the issue otherwise, as we are authorized to do. *See* RAP 2.5(c).

We grant relief in part, remanding to the superior court with directions to strike condition 20 from Mr. Fort's judgment and sentence. His petition is otherwise denied.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Fearing, J.

17