# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| BANK OF AMERICA, N.A., a national association, | No. 70225-4-I |
| Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| J'AMY LYN OWENS, an unmarried person; SHULKIN HUTTON, INC., P.S., a Washington professional service corporation; and EDMUND JOHN WOOD, | |
| Defendants, | |
| KENNETH TREIGER, a married person as to his separate estate, | |
| Appellant. | FILED: October 14, 2013 |

GROSSE, J. — An appellate court's mandate is the law of the case and binding on the lower court and must be followed. Here, both this court and the Supreme Court held that appellant Kenneth Treiger's lien on the real property at issue had priority over Bank of America's lien.[1] On remand, the trial court had no authority to revisit the Bank's in rem claim that the trial court "preserved and tolled" when it rendered summary judgment in favor of the Bank on its other claim. The in rem claim was not raised on review of the summary judgment and the claim was, therefore, abandoned. The trial court had no authority to ignore the Supreme Court's mandate on remand. Accordingly, we reverse the summary judgment and remand with directions that the trial court enter judgment consistent with the Supreme Court's opinion and mandate.

---

[1] Bank of America, N.A. v. Owens, 153 Wn. App. 115, 221 P.3d 917 (2009); Bank of America, N.A. v. Owens, 173 Wn.2d 40, 266 P.3d 211 (2011).

FACTS

Kenneth Treiger and J'Amy Lyn Owens married in July 1997. Treiger and Owens separated on June 1, 2000 and filed for dissolution in February 2001.

In January 2002, during the pendency of the dissolution action but before entry of a decree of dissolution, Treiger filed a chapter 13 bankruptcy petition, which was converted to a chapter 7 bankruptcy in April 2002. In February 2002, Owens filed a separate chapter 11 bankruptcy petition.

The bankruptcy court in Treiger's case lifted the stay to allow the parties' dissolution action to proceed in superior court. The superior court entered a decree of dissolution on June 19, 2002 and reserved property and debt issues until the bankruptcy proceedings concluded.

Between the date of separation and the entry of a decree of dissolution, Treiger and Owens purchased real property referred to as the "Maplewood property" as husband and wife. The bankruptcy court determined that this property was community property and therefore property of Treiger's bankruptcy estate.

While the parties were married, Owens, as part owner of a business called The Retail Group, executed a promissory note and borrowing agreement in favor of Bank of America, N.A. (the Bank). The Retail Group defaulted under the note and agreement, and the Bank filed a claim in Treiger's bankruptcy action.

In April 2004, nearly two years after entry of the decree of dissolution, Treiger's trustee and Owens entered into a settlement agreement in which the trustee agreed to convey his entire interest in the Maplewood property to Owens, subject to all liens of record against the property, in exchange for $215,000 from

Owens. By trustee's quitclaim deed dated April 29, 2004, the trustee conveyed all of the bankruptcy estate's interest in the Maplewood property to Owens, "a single individual." The Maplewood property thus became Owens' separate property.

Treiger's chapter 7 case was closed in March 2005 and any obligation he owed to the Bank was discharged. Owens' chapter 11 case was dismissed in July 2005.

Treiger and Owens then returned to superior court to complete the property distribution in their dissolution action. In May 2006, the superior court entered a supplemental decree of dissolution (Supplemental Decree), dividing their assets and liabilities. In the Supplemental Decree, the court ordered that the Maplewood property be sold and that Treiger be awarded one-half of the net proceeds of the sale. The court also entered several orders awarding Treiger varying amounts of fees and sanctions for Owens' intransigence during the dissolution proceedings. Treiger recorded the Supplemental Decree as well as other orders pertaining to fees and sanctions on October 27, 2006.

Meanwhile, in July 2006, the Bank filed an action against Owens, seeking payment of the debt she guaranteed. In November 2006, the Bank amended its complaint to add a claim in rem against any separate property of Owens awarded to Treiger. The Bank moved for a prejudgment writ of attachment on the Maplewood property. The trial court granted the Bank's motion and directed the issuance of a prejudgment writ of attachment on the Maplewood property against only Owens' interest in the property. A writ of attachment issued in accordance

3

with the court's order and was recorded on December 20, 2006. On December 14, 2007, the Bank obtained a judgment in the amount of $593,519.24.

The bankruptcy, dissolution, and debt collection proceedings gave rise to several conflicting claims that complicated the sale of the Maplewood property by preventing the parties from obtaining title insurance. The Bank, Treiger, Owens, Owens' attorney, and an independent trustee entered into an agreement (Trust Agreement) to obtain title insurance and facilitate the sale of the Maplewood property. In the Trust Agreement, the parties agreed that any of them could file a declaratory judgment action, naming the other parties as defendants and seeking a declaration regarding the priority and extent of the claims asserted by Owens, Treiger, the Bank, and Owens' attorney in the net sale proceeds held in trust by the trustee. The Trust Agreement provides: "Owens, as her separate estate, is the owner of the Property."

The Maplewood property sold in May 2007. On May 20, 2007, pursuant to the Trust Agreement, the title insurance company wired the net proceeds of the sale ($1,114,054.83) to the specified trust account.

Upon deposit of the net proceeds into the trust account, the Bank filed a declaratory judgment action to determine the priority of the parties' interest in the funds held in trust. On cross motions for summary judgment brought by Owens, Treiger, and the Bank, the trial court granted the Bank's motion and concluded that the matter was controlled by the Trust Agreement in which the parties agreed that the Maplewood property was Owens' separate estate. The court also concluded that apart from the money judgments, the Supplemental Decree did not grant Treiger a lien or other interest in the Maplewood property, but rather

4

awarded him half of the proceeds from the sale of the property, "which is one-half of the monies received by Owens as the seller of the Maplewood [p]roperty . . . prior to the sale on May 20, 2007."

The court ordered distribution of the net proceeds of the sale of the Maplewood property in the following order:

(1) payment of Owens' $40,000 homestead exemption;
(2) payment to Treiger of four [money] judgments he recorded on October 27, 2006 . . .;
(3) payment on the Bank's judgment lien which attached to the property pursuant to the prejudgment writ of attachment;
(4) payment to Treiger of other judgments entered and recorded after the Bank recorded its writ of attachment; and
(5) payment of any remaining amount held in trust to Treiger and Owens in accordance with the supplemental decree of dissolution or any other order entered in the dissolution proceeding.

The court's order also states that the court had not adjudicated the Bank's in rem claim because it was rendered moot by its decision in the declaratory judgment action. The order further provides that the Bank's in rem claim would be preserved and tolled in the event the court's decision on the priority of the parties' liens was appealed.

Treiger appealed the order granting the Bank's motion for summary judgment. Neither the issue of the trial court's handling of the Bank's in rem claim, nor the merits of that claim, was raised on appeal. This court determined that the Supplemental Decree created a lien on one-half of the net proceeds of the sale of the Maplewood property and held that the trial court erred in failing to grant priority to Treiger's lien.[2]

---

[2] This court also ruled on the trial court's determinations as to whether the documents Treiger recorded constituted judgments. This issue is not relevant to the present appeal.

Treiger and the Bank petitioned for review in the Supreme Court. The Supreme Court granted review and, again, no issue regarding the Bank's in rem claim was raised. The Supreme Court, affirming this court, held that the Supplemental Decree established an equitable lien on the Maplewood property in favor of Treiger in the amount of one-half of the net proceeds of the court-ordered sale of the property.[3] The court stated:

> In the present case, the Supplemental Decree created an equitable lien on the Maplewood property. The Supplemental Decree's award to Treiger of one-half of the net proceeds of the sale of the Maplewood property did not include a sum certain. As such, it did not create a statutory lien for that award. However, the Supplemental Decree specifically identified the Maplewood property, including its tax parcel number, and fastened Treiger's award to that property. As a result, the Supplemental Decree created an equitable lien on the Maplewood property in favor of Treiger for one-half of the net proceeds of its sale. Because the Supplemental Decree was entered and recorded prior to the Bank's prejudgment writ of attachment, Treiger's lien has priority.[4]

As to this issue, the court "remand[ed] this case to the superior court for further proceedings consistent with this opinion."[5]

On remand, the Bank moved for summary judgment on its in rem claim against the separate property of Owens awarded to Treiger in the Supplemental Decree. Treiger moved for the entry of judgment on the mandate. The superior court granted the Bank's motion and awarded it an in rem judgment of $308,990.37 and denied Treiger's motion for entry of judgment on remand. The court also ruled that the Bank's judgment was superior to Treiger's claim and

---

[3] The Supreme Court's disposition of the other issue on appeal, regarding whether certain documents Treiger recorded constituted judgments, is not relevant to this appeal.
[4] Owens, 173 Wn.2d at 50.
[5] Owens, 173 Wn.2d at 55.

allowed the Bank to satisfy the judgment from Treiger's half of the net proceeds from the sale of the Maplewood property.

Treiger appealed directly to the Supreme Court and also moved to recall the mandate, arguing that the trial court failed to comply with the Supreme Court's earlier decision. The court denied the motion to recall the mandate and transferred the appeal to this court.

## ANALYSIS

A motion for summary judgment may be granted when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[6] We review summary judgment orders de novo, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party.[7]

Treiger argues that the trial court failed on remand to comply with the Supreme Court's mandate granting him priority over the Bank in the proceeds of the sale of the Maplewood property. He argues that the court's determination that his lien has priority over the Bank's lien is the law of the case. The Bank argues that because the Supreme Court did not specifically direct the entry of judgment in favor of Treiger on remand, the Supreme Court "implicitly directed" the trial court to exercise its discretion in resolving the Bank's preserved in rem claim. We agree with Treiger.

An appellate court's mandate is binding on the lower court and must be strictly followed.[8] While a remand "for further proceedings" "signals this court's expectation that the trial court will exercise its discretion to decide any issue

---

[6] CR 56(c).
[7] Lam v. Global Med. Svs., 127 Wn. App. 657, 661 n.4, 111 P.3d 1258 (2005).
[8] McCausland v. McCausland, 129 Wn. App. 390, 399, 118 P.3d 944 (2005), overruled on other grounds, 159 Wn.2d 607 (2007).

necessary to resolve the case,"[9] the trial court cannot ignore the appellate court's specific holdings and directions on remand.[10] Also, RAP 12.2 provides in part: "Upon issuance of the mandate of the appellate court as provided in rule 12.5, the action taken or decision made by the appellate court is effective and binding on the parties to the review and governs all subsequent proceedings in the action in any court." These principles embody the law of the case doctrine. Under that doctrine, "once there is an appellate holding enunciating a principle of law, that holding will be followed in later stages of the same litigation."[11] The law of the case doctrine binds the parties, the trial court, and subsequent appellate courts to the holdings of an appellate court in a prior appeal until such holdings are authoritatively overruled.[12]

Humphrey Indusustries, Ltd. v. Clay Street Associates, LLC[13] is instructive. In that case, the Supreme Court reversed the trial court's award of attorney fees against Humphrey, holding that the record did not establish that Humphrey's actions under the dissenter's rights provisions of the Washington Limited Liability Company Act (LLC Act), chapter 25.15 RCW, were arbitrary, vexatious, and not in good faith. The court also remanded with directions that the trial court determine whether Humphrey was entitled to an award of attorney fees on the ground that the LLC failed to substantially comply with the LLC Act. On remand, the trial court awarded Humphrey fees based on the LLC's failure to

---

[9] In re Marriage of Rockwell, 157 Wn. App. 449, 453, 238 P.3d 1184 (2010).
[10] McCausland, 129 Wn. App. at 400.
[11] State v. Schwab, 134 Wn. App. 635, 644, 141 P.3d 658 (2006).
[12] Humphrey Indus., Ltd. v. Clay Street Assocs., LLC, 176 Wn.2d 662, 669, 295 P.3d 231 (2013) (quoting Greene v. Rothschild, 68 Wn.2d 1, 10, 414 P.2d 1013 (1966)).
[13] 176 Wn.2d 662, 295 P.3d 231 (2013).

substantially comply with the LLC Act. The trial court also reinstated a portion of the fees against Humphrey that the Supreme Court had reversed. Humphrey appealed directly to the Supreme Court. The court stated: "Because we held that Humphrey's conduct did not meet the standard to support a fee award under RCW 25.15.480(2)(b), that conclusion became the law of the case and the trial court erred by failing to apply that holding on remand."[14] The Supreme Court held that the trial court had no authority on remand to reconsider a fee award against Humphrey and, accordingly, reversed the fees the trial court awarded on remand against Humphrey.

Similarly, the Supreme Court's holding that Treiger's equitable lien for one-half of the net proceeds from the sale of the Maplewood property had priority over the Bank's lien became the law of the case. The trial court had no authority to ignore this holding on remand. But, in its order denying Treiger's motion to enter judgment on the mandate and granting the Bank's motion for summary judgment on its in rem claim, the trial court did just that. Under the law of the case doctrine, this was error.

The decision in National Bank of Washington v. Equity Investors[15] also supports the conclusion that the trial court erred on remand. That case involved three liens: the MacDonald lien, the Columbia lien, and the Bank lien. The trial court initially ruled that the Bank lien was first in priority, the MacDonald lien second, and the Columbia lien third. Columbia appealed and assigned error to the priority of the Bank lien, but did not assign error to the priority of the MacDonald lien. The Supreme Court held that the Columbia lien was superior to

---

[14] Humphrey, 176 Wn.2d at 670.
[15] 83 Wn.2d 435, 518 P.2d 1072 (1974).

9

the Bank lien. On remand, MacDonald argued that because Columbia had not assigned error to the trial court's determination of the MacDonald lien's priority, the trial court's determination that the MacDonald lien had priority over the Columbia lien was the law of the case. The trial court ruled that the MacDonald lien was first in priority, the Columbia lien was second, and the Bank lien third. The Supreme Court reversed again, stating that it was clear that the court in the first appeal intended Columbia's lien claim to be satisfied in full from the proceeds of the foreclosure sale and that to put the MacDonald lien ahead of the Columbia lien in priority would "thwart the direction" of the court.[16] Here, too, the trial court's ruling on remand thwarted the Supreme Court's direction that Treiger's lien be given priority.

Further, we question the trial court's authority to revisit on remand the Bank's in rem claim that the trial court "preserved and tolled" when it rendered its initial decision in the declaratory judgment action. Generally, a judgment is appealable as a matter of right only after the trial court disposes of all the claims of all the parties.[17] A judgment that does not dispose of all the claims as to all the parties may be appealed only if the trial court makes the findings described in CR 54(b)[18] and RAP 2.2(d).[19] Strict compliance with CR 54(b) is required.[20]

---

[16] National Bank of Washington, 83 Wn.2d at 442.

[17] See RAP 2.2(d).

[18] CR 54(b) provides in relevant part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination in the judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment.

Because RAP 2.2(d) is virtually identical in substance to CR 54(b), strict compliance with the appellate rule is required as well.

Here, the trial court's "preserving and tolling" the Bank's in rem claim did not constitute "disposing" of that claim, as contemplated by CR 54(b) and RAP 2.2(d). Yet, the trial court made no express determination in its judgment nor did it enter findings of fact that there was no just reason for delay as is required to allow an appeal of a judgment disposing of less than all the claims to go forward without discretionary review being granted. It is far too late a stage in this protracted litigation to engage in the pointless exercise of assessing fault or blame on one party or the other for the procedural irregularities that have allowed this matter to proceed so far through the appellate process while the Bank's in rem claim remained undisposed below. We do conclude, however, that because review of the summary judgment in the declaratory judgment action was de novo, the Bank could and should have raised the in rem claim in the first appeal.

The findings may be made at the time of entry of judgment or thereafter on the court's own motion or on motion of any party.

[19] RAP 2.2(d) provides:

In any case with multiple parties or multiple claims for relief, or in a criminal case with multiple counts, an appeal may be taken from a final judgment that does not dispose of all the claims or counts as to all the parties, but only after an express direction by the trial court for entry of judgment and an express determination in the judgment, supported by written findings, that there is no just reason for delay. The findings may be made at the time of entry of judgment or thereafter on the court's own motion or on motion of any party. The time for filing notice of appeal begins to run from the entry of the required findings. In the absence of the required findings, determination and direction, a judgment that adjudicates less than all the claims or counts, or adjudicates the rights and liabilities of less than all the parties, is subject only to discretionary review until the entry of a final judgment adjudicating all the claims, counts, rights, and liabilities of all the parties.

[20] Schiffman v. Hanson Excavating Co., Inc., 82 Wn.2d 681, 688-89, 513 P.2d 29 (1973).

Having failed to do so, the Bank abandoned that claim. The trial court erred by allowing the Bank to resurrect its in rem claim on remand, in effect allowing the Bank to sit on its in rem theory and raise it upon not prevailing on its initial theory. Doing so flies squarely in the face of of the indisputable policy against allowing piecemeal appeals.[21]

Substantively, the trial court was also incorrect in concluding that the Bank's in rem claim has priority over Treiger's lien. The Supplemental Decree created an equitable lien on the Maplewood property, which is the same "rem" against which the Bank asserts its in rem claim. Because Treiger's lien is first in time, it is first in right. And, although not exactly on point, the court's holding in Griggs v. Averback Realty, Inc.[22] is persuasive:

> [W]hen the community creditors have not obtained, during the existence of the marriage, a judgment against one or both of the spouses, or against the community, and when a former spouse, after termination of the marriage, prevails on the merits, then property distributed to that former spouse—even though previously community property—cannot be used to satisfy a judgment against the former spouse.

As in Griggs, the Bank did not obtain a judgment against one or both spouses during the existence of the marriage. Like the plaintiff's judgment in Griggs, the Bank's judgment was against only one spouse, namely Owens. And,

---

[21] See, e.g., Minehart v. Morning Star Boys Ranch, Inc., 156 Wn. App. 457, 462, 232 P.3d 591 (2010) ("'Piecemeal appeals of interlocutory orders must be avoided in the interests of speedy and economical disposition of judicial business.'") (quoting Maybury v. City of Seattle, 53 Wn.2d 716, 721, 336 P.2d 878 (1959)); Wlasiuk v. Whirlpool Corp., 76 Wn. App. 250, 253, 884 P.2d 13 (1994) ("The policy served by requiring finality before appeal is to conserve appellate energy and eliminate delays caused by interlocutory appeals.").
[22] 92 Wn.2d 576, 586, 599 P.2d 1289 (1979).

Treiger can be said to have "prevailed" in that the Bank's claims against him and the marital community were discharged in bankruptcy.[23]

We reverse the trial court's order granting the Bank's motion for summary judgment and remand for entry of a judgment consistent with the Supreme Court's opinion and mandate issued in this case.

WE CONCUR:

---

[23] We recognize that the court in Griggs limited its holding to the facts before it. Nonetheless, the holding is instructive here and supports the conclusion that, substantively, the trial court erred. The cases on which the Bank relies, e.g., Farrow v. Ostrom, 16 Wn.2d 547, 133 P.2d 974 (1943); Watters v. Doud, 95 Wn.2d 835, 631 P.2d 369 (1981), are readily distinguishable on the ground that they involve a community debt, rather than a separate debt such as the debt at issue here.