IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Guardianship of | ) | |
| | ) | No. 40187-1-III |
| JOAN N. MESLER, | ) | |
| | ) | |
| An Alleged Incapacitated Person. | ) | UNPUBLISHED OPINION |

STAAB, J. — This is the second appeal in this guardianship case. Kristyan Calhoun served as a professional limited guardian for Joan Mesler for approximately 22 months. During that time, Calhoun paid herself $54,224.59 in guardian fees. After moving to withdraw and submitting her final accounting, the superior court approved the fees that Calhoun had already paid herself.

In the first appeal we found that the superior court abused its discretion in approving Calhoun's guardian fees and remanded with instructions for the court to reconsider the fee request after applying the correct legal standards. We also instructed the court to provide more specific findings justifying the fee award.

While the matter was pending on remand, Joan Messler passed away. Following her passing, the superior court entered judgment awarding Calhoun more than double her original guardian fee, relying on novel rationales including a retroactive increase in

hourly billing rates, a percentage-based asset management fee, and the addition of new or previously unbilled time entries.

Mesler's Estate (the Estate) appeals, challenging the superior court's authority to award additional guardian compensation after Mesler's death, arguing that Calhoun's claim should have been pursued in probate. With respect to the original fee request, the Estate contends the superior court failed to comply with this court's prior mandate. In addition, the Estate challenges numerous individual findings and conclusions, and further argues that the superior court erred by awarding Calhoun attorney fees related to the first appeal. Both the Estate and Calhoun request an award of attorney fees on appeal.

We hold that the superior court exceeded its authority by awarding additional fees to a former guardian after the guardianship ended. Any request for guardian fees above those already collected by Calhoun must be submitted to the probate court. We also conclude the superior court failed to follow our directive from the first appeal and abused its discretion by relying on legally and factually unsupported rationales to support the guardian fee. We strike the amended findings and conclusions, reverse the award of guardian fees, and remand for reconsideration of the original fee request as directed in our first opinion and this decision. On remand, the superior court should resume proceedings where the first appeal left off.

We also reverse the superior court's award of attorney fees to Calhoun, we award the Estate its reasonable attorney fees and costs as the prevailing party in this appeal, and we deny Calhoun's request for attorney fees.

BACKGROUND

Background on the original guardianship proceeding is detailed in this court's prior published opinion, *In re Guardianship of Mesler*, 21 Wn. App. 2d 682, 507 P.3d 864 (2022) (*Mesler* I). In *Mesler* I, this court reversed the superior court's order approving $54,224.59 in guardian fees and costs to Calhoun and remanded for further proceedings. *Id*. at 720-21. Relevant to this appeal, we held that the superior court abused its discretion in several respects: by failing to consider the certified professional guardian's standards of practice (CPG), by authorizing Calhoun to pay herself without prior court approval, and by entering findings that were too conclusory to permit meaningful appellate review. *Id*. at 703-18, 720-21.

We directed the superior court on remand to apply the correct legal standard under RCW 11.92.180 and to make specific findings identifying which tasks performed by the guardian benefited Mesler or her estate, what work was necessary to accomplish those tasks, whether the time billed was reasonable, and whether the hourly rates charged were appropriate. *Id*. at 720-21. The superior court was instructed to consider the applicability of the CPG Standards, independently review the billing records, and consider new evidence as needed. *Id*. We reiterated that guardian "fees should not be allowed simply

3

on the basis of work performed.  Instead, 'the court must determine the need for the work performed and whether the work benefited the guardianship.'"  *Id*. (citation omitted).  Finally, we denied Calhoun her request for attorney fees on appeal and awarded Messler her attorney fees.  *Id.* at 720.

*Remand proceedings*

The superior court initiated the post remand proceedings in July 2022 through email correspondence with the parties.  In a November 30, 2022 email, the court identified "unusual" aspects of the guardianship including that Mesler did not know the extent of her assets and could not communicate, and that her adult children had engaged in ongoing disputes marked by "an extreme level of rancor, accusations, and mistrust."  2 Clerk's Papers (2CP) at 93.  The court, sua sponte, asked the parties to research whether a guardian's fee award could account for the risk or difficulty of the case.  The court added that "[p]rofessional trustees commonly adjust their fees based on the size of the trust corpus.  Trustees usually charge a percentage of the trust corpus as part of their fees, in addition to their hourly rates for time expended."  2CP at 93.

One month later, the superior court directed Calhoun[1] to submit a supplemental declaration addressing any inadequacies in her initial filings and explaining or expanding upon her billing entries.  The court also suggested that because a fee schedule furnished

---

[1] Calhoun was Mesler's limited guardian from April 17, 2018 to January 24, 2020.

by Mesler's limited successor guardian "Lifetime Advocacy Plus"[2] showed that the agency charges a percentage of the guardianship assets being managed, Calhoun might similarly be entitled to compensation based on a percentage of assets under management. The court cautioned that even if some billing charges were reduced or disallowed, the final award could exceed the original amount awarded and noted that this would also affect any award of attorney fees.

In February 2023, the superior court emailed the parties an incomplete draft of its "amended Findings and Conclusions." 2CP at 98-114. The draft findings incorporated the court's rationale that guardians "commonly receive" compensation in part based on an annual percentage value of the estate and included preliminary calculations. The court's conclusions included its rationale that guardians are free to prove that their original billing "actually should have been higher." 2 CP at 113. In its email, the court cautioned that it could not complete the draft until it received Calhoun's amended billing statement.

Approximately one month later, the court emailed the parties a second revised draft of its amended findings and conclusions. In this email, the court asked the parties to identify any proposed findings that were not supported by evidence or if any conclusions

---

[2] Lifetime Advocacy Plus was appointed as Mesler's limited successor guardian on the same day Calhoun was discharged.

were not supported by authority. Again, the court noted that it awaited a copy of Calhoun's amended billing statement. The court's second draft of its findings and conclusions expanded on the court's rationales summarized above.

Calhoun submitted her supplemental declaration, amended billing statements, and a renewed motion for guardian fees and attorney fees on March 31, 2023.

On May 2, 2023, Mesler passed away. The next day, Lifetime Advocacy Plus filed a notice of substantial change in circumstances.

On June 5, 2023, the court filed its final amended findings and conclusions. In this version, the court expanded on its earlier drafts and included those rationales discussed above with more detailed calculations of the tentative fee award. Among the additional findings, the court found that because of the high risk and unusual nature of the guardianship, Calhoun and her staff's billing rates should be "substantially higher," and included calculations to that effect. For the first time, the court quantified the final award, finding that Calhoun was entitled to a total of $118,743.88 in guardian fees (inclusive of the amount she had already been paid). The court cautioned the parties that it had not determined attorney fees because it awaited updated billings and indicated that it would decide the issue during the hearing on entry of judgment.

*Post entry of Amended Findings of Fact and Conclusions of Law*

On July 14, 2023, Lifetime Advocacy Plus filed a motion to approve the limited guardian/limited conservator's final report and accounting. Two weeks later, the superior

court denied the motion, ordering that Lifetime Advocacy Plus "shall not be relieved of guardianship duties until the dispute between Ms. Mesler (or her estate) and Ms. Calhoun, the prior guardian, has been fully resolved." 2CP at 749.

On August 31, attorney Dan Young filed a notice of appearance in the case on behalf of the personal representative (PR) of Mesler's Estate.

On October 13, Calhoun filed her motion presenting her guardian and attorney fees and costs. She requested the court enter judgment for guardian fees and expenses totaling $118,743.88, consistent with the superior court's amended findings and conclusions. She further requested an award of attorney fees and costs incurred from August 2021 through August 2023 in the amount of $21,918.80.

The Estate filed several responsive pleadings. In addition, the PR for the Estate filed motions to (1) substitute the Estate for the decedent, (2) transfer conservatorship assets to the PR, and (3) set a supersedeas bond amount in the event judgment was entered in favor of Calhoun.

On December 29, 2023, the superior court entered judgment in favor of Calhoun for her additional guardian fees in the amount of $66,244.85. The court also awarded Calhoun $23,868.29 in attorney fees and costs.

The Estate appeals.

ANALYSIS

1. TIMELINESS OF APPEAL

As a threshold issue, Calhoun argues the appeal filed by Mesler's Estate is untimely. She contends the Estate seeks review of the superior court's amended findings and conclusions entered on June 5, 2023, but points out that it did not file its notice of appeal until January 8, 2024, beyond the 30-day deadline. Calhoun asserts the Estate's appeal of the judgments for guardian fees and attorney fees does not bring up the superior court's amended findings and conclusions under RAP 2.4(b).

The Estate responds that the amended findings and conclusions were not final or appealable orders. It argues the final judgments in this matter were the fee judgments entered on December 29, 2023, and that its appeal from those judgments was timely. We agree with Mesler.

Under RAP 2.2(a)(1), a party may appeal from the "final judgment entered in any action or proceeding, regardless of whether the judgment reserves for future determination an award of attorney fees or costs." Under RAP 2.2(a)(3), a party may appeal from any "written decision affecting a substantial right in a civil case that in effect determines the action and prevents a final judgment or discontinues the action." RAP 5.2(a)(1) requires a notice of appeal to be filed no later than 30 days after entry of the decision that the party wants reviewed.

Here, the June 5, 2023 amended findings and conclusions did not constitute a final judgment in this case, nor did it prevent final judgment or discontinue the action. The superior court expressly stated that it had not yet resolved the attorney fee issue and anticipated entering judgment on a later date. As our supreme court has explained, findings and conclusions are not reviewable on appeal unless accompanied by entry of the judgment on which they are based. *See Grip v. Buffelen Woodworking Co.*, 73 Wn.2d 219, 224-25, 437 P.2d 915 (1968).

The final judgments in this case—the orders awarding guardian and attorney fees—were entered on December 29, 2023. The Estate filed its notice of appeal on January 8, 2024, well within the 30-day deadline. As such, the appeal is timely under RAP 5.2(a)(1).

Calhoun's reliance on RAP 2.4(b) is misplaced. That rule limits the scope of review in an appeal from a decision awarding attorney fees or costs by clarifying that such an appeal does not bring up for review a prior, separately appealable decision that has not been timely appealed. *See* RAP 2.4(b). But that rule presumes there was an earlier final, appealable decision, which is not the case here. The amended findings and conclusions did not resolve all claims or terminate the litigation. They were not independently appealable under RAP 2.2. Because the Estate timely appealed from the final judgments in this case, this court may review the amended findings and conclusions on which those judgments are based.

9

2.    AWARD OF GUARDIAN FEES

Mesler's Estate raises several arguments contending the superior court erred in awarding Calhoun nearly double the original guardianship fee.  We address the Estate's dispositive arguments below.

*A.  Standards of Review*

We review a superior court's decision on an award of guardian fees for an abuse of discretion.  *Mesler* I, 21 Wn. App. 2d at 700-01.  "'A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or when untenable reasons support the decision.'"  *Id*. at 701 (quoting *In re Guardianship of McKean*, 136 Wn. App. 906, 918, 151 P.3d 223 (2007)).  A decision is "manifestly unreasonable" if it falls outside the range of acceptable choices given the facts and law; it is based on "untenable reasons" if it applies an incorrect standard or fails to satisfy legal requirements.  *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

We review a superior court's findings of fact by determining whether they are supported by substantial evidence, and, if so, whether those findings support the conclusions of law.  *Mesler* I, 21 Wn. App. 2d at 700-01.  "Substantial evidence is evidence that is sufficient to persuade a rational, fair-minded person of the truth of the finding."  *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

A superior court must adhere to appellate court directives on remand and cannot ignore specific holdings.  *Bank of Am., N.A. v. Owens*, 177 Wn. App. 181, 189, 311 P.3d

594 (2013). Following a mandate for further proceedings, a superior court must comply with that mandate, and we review the superior court's compliance for an abuse of discretion. *Id*.

### B. The Claim for Additional Guardian Fees Should Have Been Submitted to the Personal Representative of Mesler's Estate as a Creditor's Claim

The Estate argues the superior court erred by awarding Calhoun additional guardian fees after Mesler's death. It contends that under RCW 11.130.570(2), the guardianship terminated upon death, and any claim for unpaid compensation became a creditor's claim to be resolved through the probate process. It asserts that by seeking judgment in the guardianship proceeding, Calhoun sidestepped the statutory process and improperly obtained a judgment against a conservatorship estate that no longer existed.

Calhoun responds that the superior court appropriately resolved her fee claim within the guardianship case because the court had not yet approved the successor guardian's final report or transferred assets to probate. She emphasizes that her claim concerned services performed during Mesler's lifetime and was the subject of a prior appellate remand requiring additional findings. Finally, she points out that she filed a timely creditor's claim with the estate but that claim was rejected.

We hold that the superior court lacked authority to award additional guardian fees to Calhoun following Mesler's death as the guardianship terminated pursuant to RCW 11.130.570(2).

11

### i. Additional background

During the time that Calhoun was Mesler's limited guardian, Calhoun paid herself $54,224.59 in guardian fees. At the time Calhoun filed her notice of intent to resign, Mesler was still alive. Lifetime Advocacy Plus was appointed as Mesler's successor limited guardian on the same day the court discharged Calhoun.

Following remand from the first appeal, at the December 29, 2023 hearing, Mesler's counsel objected to the proposed judgment:

> THE COURT: Did you have any issue with regard to the form of the orders? . . .
>
> [MESLER'S COUNSEL]: Well, one of them, Your Honor, the judgment debtor they list as the conservatorship estate of Joan Mesler, and it's not clear to me that they can get a judgment against the conservatorship estate.
>
> I think the process they should be doing is making a creditor's claim and going through the probate. We have a probate of Ms. Mesler's estate in Pierce County, and so I don't think they should be coming here in this Court and getting judgments that affect the probate estate without going through the probate process.
>
> THE COURT: Well, the guardianship is still open, and so that's why they're here, and so I don't, and I'm making the determination of a guardianship debt. So I think it's appropriate to enter the judgment against the guardian, against her, against Ms. Mesler, because she's actually the named party or against the guardianship of Joan Mesler.

Rep. of Proc. (RP) (Dec. 29, 2023) at 45-46.

The court ultimately entered both judgments, naming "The Conservatorship Estate of Joan N. Mesler" as the judgment debtor. 2CP at 1034, 1036. The court also entered an order directing the successor guardian to deposit $175,000.00 into the court registry to supersede the judgments pending appeal. The order further directed that the guardianship remain open until final disposition of those funds.

### ii. Analysis

Under RCW 11.130.570(2), a guardianship terminates when the adult subject to guardianship dies. Mesler's guardianship therefore ended on May 2, 2023. However, long before that date, Lifetime Advocacy Plus replaced Calhoun as limited guardian of Mesler's estate. Calhoun ceased serving as guardian in January 2020.

When Calhoun submitted her amended billing statement and supplemental declaration in 2023, she was not serving as, nor acting as guardian. Rather, she was a former guardian seeking additional compensation for services rendered prior to discharge. As such, her legal status was that of a creditor, well before Mesler's death.

Washington law is clear that a creditor who has not received payment during the ward's lifetime must present any remaining compensation claim through probate. In *State ex rel. National Bank of Commerce of Seattle v. Frater*, the supreme court rejected the argument that a creditor could bypass probate by seeking payment directly through a guardianship proceeding:

> [I]f for any reason a creditor of an incompetent ward does not procure from the guardian payment of his claim during the lifetime of the ward, his claim must be presented to the executor or administrator of the deceased ward's estate.

18 Wn.2d 546, 556, 140 P.2d 272 (1943); *see also In re Guardianship of Heath*, 30 Wn. App. 115, 117-18, 632 P.2d 908 (1981).

This principle is codified in RCW 11.40.010, which bars the assertion of claims against a decedent unless the creditor complies with the statutory probate process. Because Calhoun was no longer the guardian and had not been paid the additional compensation she claimed, she was required to submit a creditor's claim in the probate proceeding. If the claim was rejected, her exclusive remedy was to file a civil action under RCW 11.40.100 (governing rejection of creditor's claims).

Instead, Calhoun returned to the guardianship proceeding on remand and accepted the superior court's invitation to claim additional compensation. The court effectively granted her request for more compensation and entered judgment for the additional compensation, months after Mesler's death. This was error. The court lacked authority to adjudicate Calhoun's additional compensation creditor's claim through the guardianship case. Her status as a former guardian did not exempt her from the statutory requirements applicable to all creditors of the deceased.

The court entered judgment against "The Conservatorship Estate of Joan N. Mesler." 2CP at 1034, 1036. But no such entity existed after May 2, 2023. RCW 11.130.570(2). Once Mesler died, there was no longer a conservatorship estate against which the court could enter judgment. Calhoun's additional compensation claim, like any other claim against a decedent, had to be pursued in probate.

Calhoun argues that guardian fees are "guardianship debts" and therefore exempt from the probate process. But she cites no authority to support her arguments on this issue. Where no authority for an assertion is made, we may presume none exists. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

By refusing to approve the successor guardian Lifetime Advocacy Plus's final report and delaying the transfer of assets to the probate estate, the superior court effectively prolonged the guardianship beyond its legal endpoint. The superior court's attempt to override RCW 11.130.570(2) by simply declining to close the case was an abuse of discretion. The statute provides that a guardianship terminates automatically upon the ward's death. The fact that the court had not yet finalized the accounting or transferred funds does not alter that result.

Finally, the fact that Calhoun's request followed a remand does not change the analysis. In *Mesler* I, we directed the superior court to enter specific findings justifying the original fee award. We did not, however, authorize the court to adjudicate new compensation claims after Mesler's death contrary to RCW 11.130.570(2) and RCW

15

11.40.100.  The appropriate course was for Calhoun to present her claims for additional

compensation to the personal representative and, if necessary, litigate the dispute in

probate under RCW 11.40.100.  Accordingly, the superior court erred in awarding

Calhoun additional guardian fees through the guardianship proceeding after Mesler's

death.

> C.  *The Superior Court's Rationales Supporting the Guardian Fees Are Legally*
>      *and Factually Untenable*

In addition to exceeding its authority by entering a judgment for fees in excess of

those Calhoun already collected outside of probate, the superior court applied several

untenable theories to support the fee award.

> i.  *The court abused its discretion by adding unbilled and unexplained charges*

The Estate argues the superior court erred in awarding guardian fees based on

charges that Calhoun either affirmatively chose not to bill or failed to explain.  Calhoun

offers no meaningful response to this argument, providing only generalized assertions

that the court reviewed the amended billing and eliminated duplicative or insufficient

entries.  We conclude the superior court abused its discretion by adding unbilled and

unexplained charges into the fee award.

In its amended findings and conclusions, the superior court found:

> This court has carefully scrutinized and independently examined every
> entry in the Calhoun Amended Billing in an effort to jealously guard the
> rights and interests of Ms. Mesler.  The examination revealed a number of
> arithmetic errors.  There were several entries that included the time and

rate, but those numbers had not been multiplied together in order to arrive at the billing amount for the entry. This court corrected those errors.

2CP at 367.

The court then found that, before any upward adjustments for increased hourly rates or a percentage based asset management fee, the "standard" total guardian fee was $64,427.91. This amount exceeded the original fee request of $54,224.59 by $10,203.32.

The addition of the unbilled charges was not supported by the record and therefore was an abuse of discretion. Calhoun explicitly stated, and the court explicitly acknowledged, that Calhoun and her staff intentionally chose not to bill certain amounts. Calhoun declared that "we did not bill for $4,603.56 worth of charges that were incurred." The superior court acknowledged that Calhoun voluntarily decided not to charge approximately $4,500.00. And Calhoun points to no record evidence supporting the court's finding that the unbilled charges were merely arithmetic errors.

The Estate argues the superior court erred by including 128 new billing entries submitted for the first time in Calhoun's amended billing. These entries were not part of the original fee request and were never disclosed or discussed in Calhoun's supplemental declaration. According to the Estate, most of the new entries either fell outside the relevant billing period or were recorded as no-charge entries. The Estate contends the superior court made no findings acknowledging the existence of these entries or explaining why they were properly included in the revised fee total.

Calhoun offers no explanation for the addition of these 128 entries.  The superior court also made no findings recognizing the addition of these entries or explaining how they contributed to the fees reflected in Finding of Fact (FF) 96.  Without findings linking the entries to the relevant billing period or demonstrating their necessity and benefit to Mesler or her estate, the addition of these charges in FFs 81 and 96 are unsupported by substantial evidence.  Moreover, the court's decision to incorporate these charges and correct perceived "arithmetic errors" lacks factual support in the record and is therefore an abuse of discretion.

### ii.  The court abused its discretion by arbitrarily increasing Calhoun and her staff's hourly rates

The Estate next argues the superior court erred in retroactively increasing Calhoun's and her staff's hourly rates.  Calhoun defends the increase as justified by the high risk and complexity of the case.  We conclude the superior court abused its discretion by arbitrarily inflating the billing rates without legal authority or evidentiary support.

In FF 93, the superior court found that "[s]ince this was clearly an extremely high risk guardianship, [Calhoun] is entitled to charge substantially higher rates to compensate for the risks [she] assumed."  2CP at 374.  Based on that rationale, the court went on to list increased billing rates that it found reasonable in this case given the "risks" involved.  During the December 29 hearing, the court justified its increase by explaining:

I determined that because of the complexity and difficulty of the case, a guardian should be entitled to be compensated at rates higher than what might be considered to be standard rates, because the risk to the guardian is substantially greater in those cases, as we have seen in this case.

If the law is the guardian can only charge the same hourly rate in a complex, difficult, risky case that she charges in a very simple case where there's no risk to the guardian and very little work required of the guardian, then who would ever want to be a guardian in a case where there's a lot of risk? The risk that you're going to get sued in the future, you're going to have complaints filed against you? Nobody's going to want to take those cases, and that's contrary to public policy.

Public policy should encourage guardians to take difficult cases, not discourage them, which is why I felt it was appropriate to award fees based on a higher hourly rate, and this is very similar to what happens—there's law in cases involving attorney's fees where if the case is extremely difficult, if it involves novel issues, that kind of thing, that can justify higher rates awardable to the attorney, so—and I explained that all in my findings and conclusions.

And I confess that I don't know of any authority that says I can do that. I know of no authority that says I can't do that, but if my job is to determine what is fair compensation for the guardian, if my job is to determine what will encourage people in the future, guardians in the future to take cases as difficult as this, then I think that supports my determination of what the law either is or should be. The law never changes unless some Judge says, well, this isn't fair; it ought to be different.

RP (Dec. 29, 2023) at 25-26.

The superior court's decision constitutes an abuse of discretion. The court acknowledged that its decision was unsupported by any legal authority. A court's personal belief about what the law "ought to be" does not provide a lawful basis for

increasing guardian compensation. A decision based on such reasoning is both legally untenable and manifestly unreasonable.

Moreover, the court's action violated our directive in *Mesler* I. On remand, we instructed the superior court to determine whether the hours billed were reasonable and whether the hourly rates charged were appropriate. *Mesler* I, 21 Wn. App. 2d at 720-21. That directive did not authorize the superior court to increase the rates Calhoun charged, especially absent a request from Calhoun. The superior court's decision to inflate the billing rates, without a legal justification or any indication that Calhoun herself sought higher rates, exceeded the scope of the remand and was an abuse of discretion.

### iii. The court abused its discretion by imposing a percentage based asset management fee

The Estate argues that the superior court erred in awarding Calhoun a percentage based asset management fee in addition to her hourly billing rates. Calhoun defends the superior court's reasoning and decision to award the fee. We conclude that the superior court abused its discretion by imposing a percentage-based asset management fee.

During the hearing, the superior court explained its inclination to award Calhoun a percentage-based asset management fee:

> A trustee, if there'd been a trustee instead of a guardian of an estate, the trustee would have been able to charge a percentage of the value of the assets, and nobody would have disputed that, because that is the common practice of trustees, that they charge a percentage of the assets that they are charged with taking care of and being responsible for.

20

So why should it be any different for a guardian of an estate who has virtually the identical legal obligations and fiduciary duties as a trustee, why shouldn't they be paid at the same rate as a trustee? It's the same job.

. . . .

Now again, like I said, I don't know of any case in Washington that says that that, the same rules apply for guardians as trustees, but I don't see why they shouldn't, and I don't know what the argument is. I've never actually heard any argument for why, if a guardian has the responsibility of managing, taking care of preserving assets and has the same potential liability as a trustee, why shouldn't a guardian be compensated on the same basis as a trustee?

. . . .

Now, you know, an Appellate Court might say I'm wrong about that, but if an Appellate Court says that a, now a conservator would be the term now, is limited to just being paid by the hour for the work done and cannot be compensated based upon the value of the assets being managed and the risk being taken, then who would ever want to be a conservator for an estate that had substantial assets? Because the risk involved, you don't get compensated for.

. . . .

I know that in this case Lifetime Advocacy Plus apparently agreed to take the case without charging a percentage, but the fact that they did it in this one case doesn't answer the question of why is that percentage in its standard fee agreement? It must charge, I have to conclude and I have concluded that Lifetime Advocacy Plus does in some cases at least, in some guardianship cases charge a percentage of the assets being managed because otherwise why would that language be in their standard fee agreement?

So I conclude that it is being done by Lifetime Advocacy Plus, which also leads me to conclude that other professional guardians must do it too. I'm not aware of what it, like I said, I'm not aware of any case law that addresses the question of whether or not they can do that. If the law is they can't do it, then [Lifetime Advocacy Plus] is going to have to change their fee agreement and possibly their practice, but that's not our problem today.

RP (Dec. 29, 2023) at 26-32.

21

The superior court found that guardianships "commonly receive compensation" in part by being paid "an annual percentage of the value of the estate." 2CP at 371. The court referred to the fee structure indicated on successor guardian Lifetime Advocacy Plus's fee schedule that showed "annual fees for asset management of 1 [percent] for the first $500,000 and .85 [percent] of amounts greater than $500,000." 2CP at 371. The court entered a finding of the value of the Estate's assets, then calculated the annual percentage fee based on the formula from Lifetime Advocacy Plus's fee schedule, arriving at a "reasonable fee" for managing Mesler's assets of $23,371.57 "in addition to the hourly charges for services rendered." 2CP at 372. The court reiterated its reasoning in Conclusions of Law 14 and 22, stating that guardians and trustees perform similar roles and should be compensated similarly.

The superior court's decision was an abuse of discretion for several reasons. Most apparent, the court acknowledged that its decision lacked legal authority. Thus, its decision was plainly based on untenable reasons and was manifestly unreasonable.

In addition, the superior court's reliance on Lifetime Advocacy Plus's fee schedule was misplaced. Lifetime Advocacy Plus did not charge such a fee in this case. Its own billing statements reflect "$0.00" for asset management. The court nevertheless assumed, based on the presence of the fee in Lifetime Advocacy Plus's general schedule, that Lifetime Advocacy Plus and other professional guardians must charge such fees in some cases. But the schedule distinguishes among services provided in guardianship, power of

22

attorney, and trust contexts. The court cited no evidence connecting the asset management fee to Lifetime Advocacy Plus's guardianship services specifically, and Lifetime Advocacy Plus's actual billing contradicts that assumption. As a result, the superior court's findings that Lifetime Advocacy Plus charged such fees, and that others do so as well, are not supported by substantial evidence.

Moreover, the court's interpretation of Lifetime Advocacy Plus's fee schedule is inaccurate. Lifetime Advocacy Plus's fees schedule indicates that it charges "[0].01 of the market value of the *invested holdings in the account*." 2CP at 1127 (emphasis added). But the court applied the percentage formula to Mesler's entire estate, including real property, without distinguishing between invested holdings in the account and other asset types. Nothing in the record supports using the broader estate value instead of the "market value of the invested holdings in the account" that Lifetime Advocacy Plus's schedule references.

The court's findings also fail to establish that Calhoun performed the kind of asset management work that would justify a fee of this nature. The superior court made no findings pertaining to Calhoun's management of investment accounts. If it had, they would not be supported by substantial evidence. Calhoun did not manage Mesler's investment accounts. Those were professionally managed by Oppenheimer and Company Incorporated, which charged its own asset-based fees.

23

Nor is there support for the superior court's finding that guardians "commonly receive" compensation based on estate value. The only evidence cited for that proposition is Lifetime Advocacy Plus's schedule—which, as discussed, does not support it. Neither Calhoun nor the superior court identified additional evidence establishing that percentage based billing is a common practice.

Finally, the court's award of a percentage-based fee resulted in duplicative compensation. Calhoun billed by the hour for efforts to uncover, inventory, and preserve Mesler's assets, services the superior court later relied on to justify the percentage fee. Calhoun asserts that she located over $800,000.00 in previously unknown assets in support of the percentage-based asset management fee. But those efforts were already captured in her hourly billing. There is no indication that the superior court deducted that time or took any steps to prevent double recovery.

3. ATTORNEY FEES

The Estate raises several challenges to the superior court's post remand award of $23,868.29 in attorney fees and costs to Calhoun. First, it argues the superior court erred in awarding Calhoun fees for work performed in the prior appeal, despite this court's prior denial of those same fees. Second, it contends the superior court abused its discretion in awarding any attorney fees at all, asserting that Calhoun's litigation served her own financial interests rather than those of Mesler or the Estate. Finally, the Estate requests an award of attorney fees at both the superior court and appellate court levels,

24

and asks this court to impose those fees against Calhoun personally under RAP 18.1 and RCW 11.96A.150(1).

Calhoun responds that her litigation conduct was undertaken in good faith and with reasonable care, and that both superior and appellate fees are recoverable under RAP 18.1 and RCW 11.96A.150. She argues that a guardian need not prevail or show a direct benefit to the estate to recover fees under RCW 11.96A.150, so long as the litigation was undertaken in good faith. She likewise requests appellate attorney fees.

We address each argument, in turn.

### A. Additional Background

In *Mesler* I, this court awarded Mesler her attorney fees and costs under RCW 11.96A.150 for substantially prevailing on appeal, and denied Calhoun's request for appellate fees, including her request for sanctions against Mesler's counsel for filing what she claims was a frivolous appeal. 21 Wn. App. at 719-20. Specifically, we ruled:

> Under RCW 11.96A.150(1), we may order costs, including reasonable attorney fees, to be awarded to any party from any party to the proceedings. Mesler has substantially prevailed on appeal. We award Mesler her attorney fees and costs from the estate, to be determined by the trial court on remand, after consideration of the factors we have set forth above. We deny Calhoun her attorney fees on appeal.

*Id*. at 720.

On remand, however, Calhoun requested an award of attorney fees and costs incurred from August 2021 through August 2023 in the amount of $21,918.80. Her request included time spent preparing for and participating in the first appeal.

During the hearing on the fee request, Mesler's counsel objected to the court awarding fees related to the prior appeal and the court explained its view:

> THE COURT: All right. Were there any other portions of the billing that you had objected to that I've overlooked here?
>
> MR. YOUNG: Yes, Your Honor. There's work that [Calhoun's counsel] billed for Court of Appeals, because the Court of Appeals denied any fees to Ms. Calhoun on appeal. So I don't see why he can get them now, after the fact under a different legal theory.
>
> THE COURT: Okay. I have an answer to that. As [Calhoun's counsel] touched on in his brief, the Court of Appeals decision says Calhoun requests an award of attorney's fees against Mr. Young for filing a frivolous appeal, and then in the next sentence the Court says we deny Calhoun her attorney fees on appeal.
>
> Since they were remanding it and there's no way to know what the ultimate outcome was going to be, I think, I interpret this as meaning that the Court of Appeals was denying the request for fees against Mr. Young, that they were not saying that if Ms. Calhoun should ultimately prevail that she doesn't get any time, any compensation for the fees on appeal and, again, that makes sense because when litigation goes on for a long time and ultimately there's a prevailing party that's entitled to attorney's fees, they're entitled to the attorney's fees, generally speaking, that they can show were reasonable and necessary for winning the case, and in the course of any litigation there's going to be battles that are won and lost.
>
> Ms. Calhoun lost the battle before the Court of Appeals, but according to my decision she has won the war and, in which case, that means she's entitled to the fees that she incurred in this whole process, and if there were billings for the work done by the attorney who briefed it for Ms. Calhoun, I would have awarded those because under the statute, [RCW] 11.96A.150, it's up to me to determine who's entitled to collect

26

fees from whom, and in this case I'm finding that [Calhoun's counsel] is entitled to be compensated, his client is entitled to be compensated for the attorney's fees incurred working with [Calhoun's counsel] throughout his entire involvement in this case, which would include some time spent on— there's not that much time in there, but there's some time spent on the appeal, but I don't think the Court of Appeals meant that Ms. Calhoun can't recover for that if she ultimately prevailed. I don't think they had that in mind. That wasn't at issue.

So anything else about the billing, Mr. Young?

MR. YOUNG: Well, except, Your Honor, I would point out that the Court of Appeals said that Ms. Mesler substantially prevailed on appeal, and so it seems sort of odd to suppose that Ms. Calhoun did not substantially prevail on appeal, but yet she gets Appellate attorney's fees for that. I don't, I mean, that doesn't sound very equitable to me.

THE COURT: Well, but if there hadn't been an appeal, Ms. Mesler wouldn't have had to pay any attorney's fees. It was her decision to appeal the case, and when you appeal a case, then you accept the consequences of that, and if it comes out you lose, then you may have to pay the other side's attorney's fees, and again, Mr. Young, in a typical litigation where there's multiple motion hearings, for example, a party may win some motion hearings and lose other motion hearings and then ultimately prevail in the case, and if it's a case where the prevailing party gets attorney's fees, I don't know of any authority that says, well, you only get attorney's fees for the motions you won and you don't get attorney's fees for the motions you lost, even though ultimately you won the case.

The question is, who's the prevailing party? Because, and you could break it down even further than that and you could say, well, one person, one attorney made objections and those objections were overruled and, therefore, they shouldn't be paid for the time that they spent making the objections. I don't know of any legal authority that says that's the law.

The law is you look at how much time ultimately was required to win the case and, like I said, Ms. Mesler chose to appeal. I assume that you explained to her that there would be risks with an appeal and that ultimately she may end up having to pay more. She may have to pay attorney's fees. I assume you explained that to her in detail, Mr. Young, and that she went into this understanding that and accepting those risks.

So again, if you can find some law that says that what you look at is who won each individual battle in determining legal fees, as opposed to who won the war, I'll take a look at that, but you certainly haven't cited any authority to me of that (inaudible) and I'm not aware of any authority.

RP (Dec. 29, 2023) at 37-40.

The superior court ultimately awarded Calhoun $23,868.29 in attorney fees and costs.

### B. Attorney Fee Standards

We review a superior court's award of attorney fees under RCW 11.96A.150 for abuse of discretion. *See In re Guardianship of Lamb*, 173 Wn.2d 173, 184, 265 P.3d 876 (2011). Under RCW 11.96A.150(1), this court may order costs, including reasonable attorney fees, in any amount and manner it deems equitable, and may direct payment from any party or from the estate. In exercising this discretion, we may consider any factors we find relevant, including whether the litigation benefitted the estate. *See* RCW 11.96A.150(1).

### C. The Superior Court Abused Its Discretion in Awarding Fees for Work Performed in the Prior Appeal

The Estate argues the superior court erred by including $2,930.00 in the fee award for time spent on the prior appeal. We agree.

A superior court must adhere to the appellate court's mandate on remand and may not revisit issues already resolved. *Bank of Am., N.A.*, 177 Wn. App. at 189-90. Whether

28

a superior court properly complies with a remand directive is reviewed for abuse of discretion. *See id.*

In *Mesler* I, this court unambiguously denied Calhoun's request for appellate attorney fees. 21 Wn. App. 2d at 720 ("We deny Calhoun her attorney fees on appeal."). That holding was binding on remand. By awarding Calhoun fees for the same appellate work that this court previously rejected, the superior court failed to follow our mandate and abused its discretion.

### D. The Superior Court Abused Its Discretion in Awarding Post-Remand Attorney Fees

The Estate, citing *In re Estate of Larson*[3] and *In re Guardianship of Adamec*,[4] argues the superior court erred by awarding Mesler attorney fees associated with her efforts to defend the reasonableness of her own fees. Calhoun argues her litigation was undertaken in good faith and with reasonable care and that she is entitled to the awarded fees under *In re Guardianship of Brown*,[5] and *Guardianship of McKean*.[6] In reply, Mesler contends *Brown* and *McKean* are inapplicable.

---

[3] 103 Wn.2d 517, 694 P.2d 1051 (1985).
[4] 100 Wn.2d 166, 667 P.2d 1085 (1983).
[5] 6 Wn.2d 215, 225, 101 P.2d 1003 (1940).
[6] 136 Wn. App. 906.

Our supreme court has held that fiduciaries, such as attorneys and guardians, are not entitled to fees incurred in defending the reasonableness of their own fees. *See*, *e.g.*, *Larson*, 103 Wn.2d at 532-33; *Adamec*, 100 Wn.2d at 179. In *Larson*, our supreme court held that a probate attorney "is not entitled to additional fees for attorneys and experts in proving the reasonableness of his fee in the final report." 103 Wn.2d at 533. The *Larson* court relied on a guardianship case, *In re Adamec*, in support of its holding. *Id*. at 532-33. In *Adamec*, the court held that former RCW 11.92.180 (1975),[7] authorizing guardian fees for services including attorney fees, did not permit a guardian to seek fees for "defending his own interests" rather than the interests of the ward. 100 Wn.2d at 179.

These principles apply here. A guardian requesting payment for services must demonstrate that the services were necessary, reasonable, and beneficial to the person and the estate. *See Guardianship of Lamb*, 173 Wn.2d at 190. Calhoun's litigation efforts on remand were primarily directed at defending and increasing the fees she had already paid herself. This litigation served her financial interests, not those of the Estate.

Calhoun argues her litigation was undertaken in good faith and with reasonable care and that she is therefore entitled to fees under *Guardianship of Brown*.[8] *See* Resp't's Br. at 49-50. But *Brown* is distinguishable. There, the guardian was required by statute

---

[7] This statute was repealed effective January 1, 2022, and replaced by the uniform adult guardianship and protective proceedings jurisdiction act, ch. 11.90 RCW. LAWS OF 2020, ch. 314 § 904.

[8] 6 Wn.2d 215.

to defend the minor ward's estate against a third-party claim brought by the administrator of a separate estate. *Id.* at 216-18, 222. The appellant administrator alleged that property held in the ward's name was wrongfully acquired and actually belonged to the decedent's estate. *Id.* at 217. The *Brown* court held that a guardian may recover fees and expenses incurred in defending against an adverse claim to the ward's estate, even when the claim seeks the entire estate, so long as the guardian acted in good faith and exercised reasonable care. *See id.* at 224-25.

That rationale does not apply here. Calhoun was not defending the Estate from an outside claim. She was litigating to preserve and increase her own compensation, years after she had already paid herself. Unlike in *Brown*, where the guardian had no personal stake and was fulfilling her fiduciary duty to protect the estate from an adverse claimant, Calhoun was acting to protect her own financial interests.

All considered, the superior court's post remand attorney fee award to Calhoun was an abuse of discretion. We reverse the court's award of attorney fees to Calhoun.

### E. The Estate's Request for Attorney Fees

The Estate requests attorney fees under RAP 18.1 and RCW 11.96A.150 against Calhoun personally. We deny this request. As in *Mesler* I, the Estate cites no authority permitting an award of fees against a former guardian personally under these circumstances.

31

As to whether the probate court should authorize attorney fees from the Estate, we recognize that the Estate has prevailed in this appeal and its work both at the superior court level following remand and in this second appeal have benefitted the Estate. But we leave it up to the probate court and superior court on remand of the guardian case to determine whether and to what extent reasonable attorney fees can and should be awarded from the Estate.

### F. Calhoun's Request for Attorney Fees

Calhoun requests appellate attorney fees under RAP 18.1 and RCW 11.96A.150. We deny her request.

RCW 11.96A.150(1) authorizes appellate courts to award attorney fees in an amount and manner deemed equitable and permits consideration of whether the litigation benefited the estate. Here, Calhoun's post-remand litigation efforts were directed at preserving and increasing compensation she had already paid herself. Her actions served her personal financial interests and did not benefit Mesler or the Estate. In addition, Calhoun is not the prevailing party on appeal. Because her claims were unsuccessful and because her litigation conferred no benefit on the Estate, an award of appellate attorney fees would not be equitable.

CONCLUSION

We strike the entirety of the superior court's amended findings and conclusions

and remand with instructions for the superior court to pick up where *Mesler* I left off.

Aside from the dispositive issue we addressed above, the Estate raises several additional

challenges that we decline to address. These issues may or may not arise on remand.[9]

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
      Staab, J.

WE CONCUR:

_____
      Lawrence-Berrey, C.J.

_____
      Murphy, J.

---

[9] Although the Estate asks that this case be remanded to a different judge, the superior court judge has retired, rendering the issue moot.