IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

HAKIM FAREED,

Appellant.

No. 85671-5-I

DIVISION ONE

ORDER DENYING MOTION
FOR RECONSIDERATION
AND ORDER WITHDRAWING
AND SUBSTITUTING OPINION

Appellant, Hakim Fareed, moved to reconsider the court's opinion filed on June 30, 2025, in the above case. A majority of the panel has determined that the motion for reconsideration should be denied. The opinion shall be withdrawn and a substitute unpublished opinion shall be filed.

Now, therefore, it is hereby

ORDERED that the motion for reconsideration is denied; and it is further

ORDERED that the opinion filed on June 30, 2025, shall be withdrawn and substituted with a new unpublished opinion.

FOR THE COURT:

Díaz, J.

Mann, J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                          Respondent,<br><br>              v.<br><br>HAKIM FAREED,<br><br>                          Appellant. | No. 85671-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DíAZ, J. — We previously remanded this matter to the trial court to correct the expiration date of two sexual assault protection orders (SAPOs) and to conduct the required analysis "on the record wherever a condition of community custody restricts" Hakim Fareed's constitutional right to parent. The court subsequently modified the SAPOs, partially compliant with our opinion, and engaged in the proper inquiry as to some conditions, but it did not comply fully with all of our directives. We are thus compelled to reverse and remand this matter again, so the court may remedy the deficiencies which remain.

## I.      BACKGROUND

We adopt and briefly summarize the pertinent facts from our prior opinion, which may be found at *State v. Fareed*, No. 83480-1-I (Wash. Ct. App. Mar. 20, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/834801.pdf.

Fareed has four adoptive children—siblings Z.F., R.F., J.F., and T.F.—and he is related to I.M., who is his nephew.  In July 2021, Fareed pled guilty to four counts of felony child molestation in the second degree, three against I.M., and one against R.F.  And he pled guilty to two counts of misdemeanor communication with a minor for immoral purposes, one as to I.M. and the other as to R.F.

For each of the felony counts of child molestation, the trial court imposed a sentence of 104 months confinement followed by 16 months of community custody, during which time—in pertinent part in Appendix H—he was forbidden from: (a) having direct or indirect contact with minors,[1] (b) holding any position of authority or trust involving minors, and (c) entering areas where children's activities regularly occur.[2]  The court additionally issued two post-conviction SAPOs prohibiting Fareed from having any contact with R.F. and I.M. for 100 years, until late 2121.

Fareed timely appealed and the State conceded error as to the duration of the SAPOs and the failure to properly consider Fareed's fundamental right to parent.  *Fareed*, No. 83480-1-I, slip op. at 3 & 6.  In our prior opinion, we concluded the expiration dates of the SAPOs were void because they exceeded the statutory maximum of two years from the conclusion of his sentenced incarceration and

---

[1] As an additional condition of the sentence itself, the court prohibited Fareed from having direct or indirect contact specifically with Z.F., R.F., and I.M., as well as no unsupervised contact with any minor for a period of 10 years.

[2] For the misdemeanor counts, the court imposed 364 days of confinement, to run consecutively with the felony sentence, but suspended the term of confinement on the condition that Fareed fulfill two years of probation.  The court also prohibited Fareed from having any contact with Z.F. and unsupervised contact with minors, and required him to follow the pertinent three conditions imposed in the appendix of the felony sentence.

2

supervision. *Id.* at 5. We further held that "various sentencing conditions here . . . limited Fareed's constitutional right to parent all four of his children" and that the court did not "engag[e] in the appropriate inquiry on the record to justify" those conditions. *Id.* at 8-9. We instructed the court "to conduct [an] analysis on the record as to *any* conditions of Fareed's sentence impacting his constitutional right to parent" and to "engage in the proper inquiry on the record *wherever* a prohibition restricts Fareed's contact with any of his children," in particular to "consider whether the scope of the [no contact orders (NCOs)] should change over time and whether the ultimate duration of the NCOs remains." *Id.* at 10 n.6 & 9-10 (emphasis added).

At the hearing on remand, the trial court re-imposed the SAPOs with shorter duration periods and re-imposed the three conditions of community custody, after making additional findings. Fareed timely appeals.

## II.  ANALYSIS

### A.  The Expiration Dates of the SAPOs

At the hearing on remand, the court stated it understood from our prior opinion that "SAPOs must expire two years following the expiration of any sentence of imprisonment and period of community supervision" and understood that we recommended it "simply . . . track that language rather than, for example, entering an order that's good for a" certain time period. Its "plan" was to "simply follow the Court of Appeals direction and change the SAPO language to track what the Court of Appeals says."

Consistent with his pre-sentencing memorandum, Fareed's counsel

agreed, and the court reiterated its plan to "track what the Court of Appeals suggested that we do, which is that it provide that it . . . expire . . . two years after the end of the sentence or community supervision" and make no "other modifications" in the SAPO, at least as to I.M.

But then, for the first time—either in writing, or during the hearing—the State asked the court to provide a specific expiration date on the SAPOs because "putting two years past the expiration of sentence does not allow for law enforcement to enter the sexual assault protection order into the[ir] database" under RCW 9A.44.210(8). The State averred that law enforcement "need[s] a date" and offered "to come up with a number." Fareed objected.

The court responded that, "Well, [the order] needs to be . . . enforceable. It needs to be . . . implementable. I appreciate [what] the Court of Appeals has said, I've got to deal with the realities on the ground. So we're somehow going to craft an order *that does both*. . . . [T]he SAPO . . . has that language about two years past sentencing in parentheses to begin with. So we're going to come up with a date." *See also* Rep. of Proc. (RP) at 37 ("Because I want to track what the Court of Appeals has told me to do. I also want the order to actually be effective. And if law enforcement can't enter the order in a database, it's useless."). And that is what the court did. Relying on the State's calculation, the court ordered that the two SAPOs expired on "9/16/31 . . . two years following the expiration of any sentence of imprisonment and subsequent period of community supervision, conditional release, probation, or parole. . . . The [calculated] expiration date is so the expiration can [be] entered into law enforcement data base. 9A.44.210(8)."

Fareed now argues that the trial court erred by entering a fixed expiration date on the SAPOs. We agree.

"An appellate court's mandate is the law of the case and binding on the lower court and must be followed." *Bank of Am., N.A. v. Owens*, 177 Wn. App. 181, 183, 311 P.3d 594 (2013). While "a remand for 'further proceedings' 'signals this court's expectation that the trial court will exercise its discretion to decide issues *necessary* to resolve the case,' [it] cannot ignore [this] court's specific holdings and directions on remand." *Id.* at 189 (emphasis added) (quoting *In re Marriage of McCausland*, 129 Wn. App. 390, 399, 118 P.3d 944 (2005), *overruled on other grounds by In re Marriage of McCausland*, 159 Wn.2d 607, 152 P.3d 1013 (2007)). If a trial court's actions on remand "'thwart the direction'" we have given or ignore our holding, it violates the "law of the case" doctrine and is error. *Id*. at 191 (quoting *Nat'l Bank of Wash. v. Equity Inv'rs*, 83 Wn.2d 435, 442, 518 P.2d 1072 (1974)).

RCW 9A.44.210[3] sets out the duration of "final sexual assault no-contact order[s]" that a court issues after a defendant is convicted of a sex offense. Such orders "shall remain in effect for a period of two years following the expiration of any sentence of imprisonment and subsequent period of community supervision,

---

[3] As we noted in our previous decision, RCW 9A.44.210 re-codified RCW 7.90.150, effective on July 1, 2022, after Fareed's original sentencing but before he was resentenced. LAWS OF 2021, ch. 215, § 168. The only change was to alter the name of sexual assault *protection* orders (SAPOs) to "sexual assault *no-contact* orders." *Id.*; RCW 9A.44.210. The statute in effect at the time of Fareed's original sentencing, the parties' original briefing, and our prior opinion on appeal, all used the term "SAPO." The parties also continue to use that terminology, and we do the same here.

conditional release, probation, or parole." RCW 9A.44.210(6)(c).

In *State v. Navarro*, we held that, where a person is convicted of various offenses within the same prosecution, the statute contemplates such orders remain in effect "for two years after the expiration of the longest sentence" the court imposes. 188 Wn. App. 550, 555, 354 P.3d 22 (2015). There, we also held that the court erred in setting his order to expire exactly 12 years from the date he was sentenced for a crime with a 10-year maximum, because he was entitled to receive credit for all the time he was incarcerated. *Id*. More generally, we noted that "an offender's actual release date can seldom be pinpointed at sentencing." *Id*. Thus, we concluded, "Because an offender's actual release date is unknowable at the time of sentencing, a sexual assault protection order *should not provide a fixed expiration date*. A preferable approach is *simply* to track the language of the statute[.]" *Id*. at 555-56 (emphasis added).

In our prior opinion, we block quoted these final sentences from *Navarro* and held that they "provided [the] guidance *which should be followed on remand*." *Fareed*, No. 83480-1-I, slip op. at 5 (emphasis added). The trial court did not follow our "specific holdings and directions on remand," *Owens*, 177 Wn. App at 189, to follow *Navarro*, which flatly held that a SAPO "should not provide a fixed expiration date" and should "simply" track the statute's language. 188 Wn. App. at 555-56. Thus, under the law of the case doctrine, the trial court erred. *Owens*, 177 Wn. App at 191.

In response, the State, as it did before the trial court, argues that fixed dates are necessary to comply with the legislative mandate of 9A.44.210(8). We

disagree, for several reasons.

First, RCW 9A.44.210(8) does not require *the court* to set fixed expiration dates in its SAPOs. Indeed, it imposes no requirement on the trial court at all. Rather, it directs that "*the law enforcement agency* shall enter the order" into their databases. RCW 9A.44.210(8). Because the court had no statutory obligation to include a fixed date, the court's decision to try to "do both,"—i.e., follow *Navarro* and facilitate law enforcement's obligations under RCW 9A.44.210(8)—was not "necessary to resolve [this] case." *Owens*, 177 Wn. App at 189. And our prior opinion contained no mention of resolving any tension between *Navarro* and RCW 9A.44.210(8). In that way too, the court's attempt to resolve both was not necessary. *Id.*

Second, the State argues that, if a court followed *Navarro*'s guidance "to the letter," it would "thwart the legislature's plain and unequivocal directive to enter the SAPO into the database with an expiration date." But, the statute's plain language provides that law enforcement must enter the orders *either* "for one year *or . . .*" until a specified date. RCW 9A.44.210(8) (emphasis added). Thus, if law enforcement is left without an "expiration date specified on the order," it could comply with the statute by entering one year, at least initially.

Finally, the State argues, if courts only include the "vague, conditional" language required by *Navarro*, an absurd result would follow as law enforcement officers "would have to conduct unreasonable amounts of legal and factual research, on the spot, to determine whether the SAPO was in force." Though we

recognize logistical issues may arise,[4] we must follow the plain language of RCW 9A.44.210(8), which permits law enforcement to enter a SAPO into the database for one-year durations in the absence of a specific final date. In reviewing the legislature's chosen words for a statute, we "should assume the Legislature means exactly what it says." *State v. Chapman*, 140 Wn.2d 436, 450, 998 P.2d 282 (2000).

Moreover, the legislature "is presumed to be aware of judicial interpretation of its enactments," yet it re-codified the statute *after* we published *Navarro*, without changing its language setting out the duration of SAPOs or its instructions for database entry. *State v. Blake*, 197 Wn.2d 170, 190, 481 P.3d 521 (2021); Laws of 2021, ch. 215, § 168. Had it concluded that our holding in *Navarro* contravened the mandate of 9A.44.210(8), the legislature could have amended the statute to clarify that courts must include exact expiration dates in order, but it did not. "We cannot add words or clauses to an unambiguous statute when the legislature has chosen not to include that language." *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003).

Therefore, we remand Fareed's judgment and sentence to the trial court for correction, specifically, to strike any specific expiration date and to provide, as it had, that the SAPOs "shall remain in effect for a period of two years following the expiration of any sentence of imprisonment and subsequent period of community

---

[4] Nothing in the statute or in this opinion prohibits a court, particularly following discussions with the parties, from indicating in the SAPO the commencement date of a defendant's incarceration, from which law enforcement could more easily derive an estimated expiration date. How law enforcement then ensures that the expiration date entered into their database is updated is not before this court.

supervision, conditional release, probation, or parole."

B.    Orders and Conditions Prohibiting Contact with Fareed's Children

Fareed next argues that the court erred in ordering Fareed to have no contact with R.F. and Z.F. specifically, and in entering conditions of community custody that implicate his relationship with all his children, both of which he claims the court did without conducting a proper analysis of the effect of such decisions on his constitutional right to parent his children.  We address the conditions applicable to each child in turn.

1.    Orders and Conditions related to R.F.

An additional condition of the original sentence itself prohibited Fareed from having direct or indirect contact with R.F. specifically.  The trial court chose to modify only Appendix H, leaving that condition in place, and entered the SAPO prohibiting contact with R.F., as discussed above.  Fareed now argues that the court erred by conducting no more than a "conclusory analysis" of his right to parent before making those decisions.  We disagree.

It is true that, as we more fully explained in our prior opinion, *Fareed*, No. 83480-1-I, slip op. at 5-6, a sentencing condition that infringes on this fundamental constitutional right may only be upheld if the condition is "reasonably necessary to accomplish the essential needs of the State and public order," and it must be "sensitively imposed."  *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008)).  It is also true that the State has a compelling interest in preventing harm and protecting children, *State v. Corbett*, 158 Wn. App. 576, 598, 242 P.3d 52 (2010), including protecting a child's physical or mental health, *State v. DeLeon*, 11 Wn.

App. 2d 837, 841, 456 P.3d 405 (2020).  And to assess whether this balance was accomplished, trial courts are required to conduct this inquiry on the record.  *Id.* at 841-42.

The record reflects the following.  Fareed filed a pre-sentence recommendation memorandum, before his resentencing hearing.  In it, he asked the court to resentence him on his conditions of community custody by conducting the balancing inquiry required by this court.  At the hearing, he made clear that he would not "argue for specific alternatives because [he] believe[d] that might be viewed as a . . . violation of the [plea] agreement."  That said, his memorandum advised the court that Fareed "has never given up on his desire to parent" and believed "consistent and frequent visitation" was "crucial" to enable parents and children to reunify.  Further, the memorandum stated that he had researched various programs open to inmates which assist with that goal, such as a nonprofit which sends Christmas gifts to children on behalf of incarcerated parents and other projects which work to rebuild familial relationships, including a four-day summer program for children.  The memorandum asserted Fareed and his children were "unable to take advantage" of these programs based on the court's prior rulings, and asked the court to consider all "'reasonable alternative way[s] to achieve the State's interest" in his case.

In response, at the hearing, the State represented to the court that R.F. had begun to demonstrate sexualized behavior directly related to Fareed's abuse and as a result was placed in a residential treatment facility.  The State further advised the court that R.F. "continue[d] to not want to have contact with his father.  And as

to Fareed's quasi-proposal, the State argued that it would have a "perverse psychological effect" on R.F. to receive a present from a person "who adopted you out of foster care and then raped you, causing you to be removed from your siblings." Thus, the State urged the court to "find that as it relates to R.F., there is no less restrictive alternative for R.F. than a complete sexual assault protection order and a complete no-contact order," barring calling, writing, visiting on Zoom, or sending Christmas presents.

The court agreed with the State and reimposed a no-contact order, holding that "the constitutional right to parent is not the constitutional right to victimize and traumatize people. And here, Mr. Fareed used his constitutional right to parent to molest his child and traumatize his family." It elaborated:

> Here, Mr. Fareed adopted R.F. And when he did that, he got a constitutional right to parent R.F. And then what he did with that constitutional right is tha[t] he's completely abused it, and he used it to molest his child. And so again, as to the state's compelling interest in preventing harm to children, there is no reasonable alternative way to . . . achieve the state's interest in preventing harm to R.F. th[a]n to continue to require no contact in the judgment and sentence and - and the -- the sexual assault protection order, as well.

We conclude the record demonstrates that the court sufficiently considered Fareed's fundamental right to parent R.F. and the less restrictive alternatives before it, such that it did not abuse its discretion in deciding to prohibit contact with R.F. *Corbett*, 158 Wn. App. at 598; *DeLeon*, 11 Wn. App. 2d at 841-42.

2.    Orders and Conditions related to Z.F.

An additional condition in each of the original felony and non-felony sentences themselves prohibited Fareed from having direct or indirect contact with Z.F. specifically. Fareed asserts that the court erred in entering these no-contact

orders because it did not properly consider the orders' effect on the parent-child relationship and because the conditions were not crime related.

We need not reach the merits of the first argument because a parent's constitutional interest in parenting is limited to their minor children. *In re Guardianship of Cornelius*, 181 Wn. App. 513, 531, 326 P.3d 718 (2014). And an issue is moot if we can no longer provide effective relief for the claimed legal error. *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). Here, Z.F. turned eighteen a week after the remand hearing. Since Z.F. legally is no longer a child, his first argument based on his parent-child relationship is moot.

In support of his second argument, Fareed avers that this issue effectively has been decided, claiming that we held that the trial court could not consider Z.F. to be a witness, in any sense of the word, and thus her role was not crime related. *See Fareed*, No. 83480-1-I, slip op. at 5 n.6. Fareed overreads our comments about Z.F. We simply noted she was not a named victim or an eyewitness to Fareed's sexual abuse, but we did not suggest either fact was required for the prohibition to be crime related. These facts are not required for such a finding.

Fareed next argues that any connection between the crimes and Z.F. was too tenuous because Z.F.'s relatives merely told Z.F. "about a crime being inflicted upon them." By that logic, he contends, the court could have prohibited contact with any person the victims spoke to, such as "police officers, mental health counselors, or any of R. and I.M.'s friends." This argument minimizes the record before the court. Namely, the court heard that Z.F. was a particularly vulnerable minor at the time the crimes were committed, and that she was traumatized by

having to keep the abuse secret for fear of physical reprisal. RP 9-11. We review the imposition of a crime-related prohibition for abuse of discretion. *State v. Duran*, 16 Wn. App. 2d 583, 587, 481 P.3d 623 (2021). We cannot say the court abused its discretion in finding the prohibition was related to the crime given these facts.

In response, Fareed claims our Supreme Court, in *Warren*, instructs courts to be reluctant to impose no-contact orders protecting non-victims. 165 Wn.2d at 33. But the court in *Warren* addressed cases with materially distinguishable facts. *Id.* (citing, *e.g.*, *State v. Riles*, 135 Wn.2d 326, 349, 957 P.2d 655 (1998), which held that a no-contact order as to all minors was not related to the crime of raping an adult woman). And the court's holding serves to support the trial court's determination here. There, our Supreme Court concluded a challenged order was indeed crime related where the protected person—like Z.F.—was directly related to victims of sex-abuse and had been pressured not to take actions that would have helped prosecute the crimes. *Id*. at 33-34.

We look to our holding in *Duran* as more instructive. There, we upheld a no contact order in protecting a witness who was neither an eyewitness nor a victim of the charged offense who had "relevant information" material to the State's case—even where, as here, the defendant pled guilty so the witness did not ultimately testify at a trial. 16 Wn. App. 2d at 585-86, 589. Likewise, Z.F. had relevant information about Fareed's crimes reported by her siblings, and she had been prepared to testify as one of the State's witnesses. *See Fareed*, No. 83480-1-I, slip op. at 10.

For all of these reasons, the court did not abuse its discretion by entering

13

no contact orders with Z.F as crime related prohibitions. *Duran*, 16 Wn. App. 2d at 587.

C.      Additional Conditions Related to All Fareed's Children

In our prior opinion, we directed the court to consider Fareed's fundamental right to parent before imposing "any" prohibition on having contact with any of his minor children, now most pertinently T.F. and J.F. *Fareed*, No. 83480-1-I, slip op. at 8-9. And we directed the court to consider on the record whether the scope or duration of any such limitations restricting contact with his children remained appropriate. *Id.* at 9-10.

On remand, the court modified the possible durations of two general community custody conditions contained in Appendix H of his original sentence, i.e., those which prohibited (1) all "contact with minors" and (3) him from being in "areas where children's activities regularly occur or are occurring." It ordered that those restrictions would apply only "until Mr. Fareed has completed a sexual deviancy evaluation and his treatment provider certifies that has made substantial progress in treatment and then only with the supervision of [an] adult who is aware of the convictions." These conditions are unchallenged in this appeal.

But the court chose not to modify a third condition, which would remain for the full duration of his community custody, i.e., that which prohibited Fareed from holding any position of authority or trust involving minors. Fareed asked the court whether it intended to modify that position as it had the other two and argued the court should because the condition "does directly affect the right to parent." The Court held that "[w]e're going to leave that as it is" because the court did not believe

the condition restricted the right to parent. After Fareed noted that a parent could both parent someone and be in a position of authority (such as a "cub scout . . . den father"), the court stated:

> Okay. Counsel, I -- I appreciate it, so then I'll make the record and conclude that given the state's compelling interest in preventing harm to children, given the nature of the offenses here, and given the risk to children if Mr. Fareed is placed in a position of authority or trust over children, there is no less restrictive way to further the state's compelling interest in protecting children than to prohibit [him from holding any position of trust or authority over minors.]

On appeal, Fareed argues that, because the condition prohibiting any position of trust or authority over minors does affect his right to parent, the court violated the law of the case by ruling in a conclusory manner. We agree on both points.

First, we note that the court erred to the extent it concluded prohibiting Fareed from holding any position of trust or authority over minors does not affect his fundamental right to parent. In our previous decision, we stated, "[t]he trial court's various sentencing conditions here…limited Fareed's constitutional right to parent all four of his children, Z, R, J, and T." *Fareed*, No. 83480-1-I, slip op. at 8. We expressly held, "[p]ursuant to the conditions of community custody . . . Fareed was also prohibited from . . . holding a position of authority or trust involving minors . . . *These conditions also limit Fareed's right to parent."* *Id.* at 9-10 (emphasis added). The trial court did not follow our specific holding and direction on remand. *Owens*, 177 Wn. App at 183.[5]

_____

[5] We also note it is not the case that the prohibition has no effect on Fareed's right to parent because his other conditions only permit supervised contact with minors. It is possible for the "trust or authority" prohibition to bar Fareed from positions he

Second, we also held that "the trial court must engage in the proper inquiry on the record wherever a prohibition restricts Fareed's contact with any of his children." *Fareed*, No. 83480-1-I, slip op. at 10. Unlike in its consideration of Fareed's right to parent R.F., and in its consideration of the other two conditions in Appendix H at issue, the court simply made a bare reference to Fareed's right to parent before reinstating the condition at issue for the full duration of his community custody. We hold this did not constitute a proper inquiry on the record.

Therefore, we remand again for the court to engage in a proper inquiry on the record as to whether the trust or authority condition restricting Fareed's right to parent remains appropriate.

D.    VPA and DVA Fees

Legislation eliminating the $500 VPA and $100 DNA fee for indigent defendants became effective in July 2023—after we decided Fareed's first appeal in March 2023, but before the trial court's remand hearing in August 2023. LAWS OF 2023, ch. 449, § § 1, 4, 27. However, the court did not strike the victim penalty

---

might seek to hold or activities he might seek to engage in even *while* supervised, such as Cub Scouts, as Fareed suggested below. Moreover, as we noted at oral argument, the condition also affects his right to parent because it implicates scenarios related to the exercise of *legal* authority in parenting notwithstanding physical custody or contact, such as authority over medical and educational decisions or the provision of finances. Wash. Ct. of Appeals oral argument, *State v. Fareed*, No. 85671-5-I (April 9, 2025), at 16 min., 41 sec. through 17 min., 2 sec. *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025041225/

assessment (VPA)[6] or DNA collection fee[7] from his judgment and sentence on remand.

Fareed now requests we remand to strike both legal financial obligations. The State concedes the matter should be remanded for that purpose, noting the court has already deemed him to be indigent. We accept this concession and remand this case to the trial court to strike the DNA collection fee and VPA in accordance with RCW 7.68.035(4) and RCW 43.43.7541(2).

### III.    CONCLUSION

We reverse the sentences imposed, and remand this matter for the trial court to correct the three errors. First, the court must abide by our specific directive to follow the holding of *Navarro*. Second, the court must properly inquire on the record whether it is appropriate to restrict Fareed's right to parent by prohibiting him from holding positions of trust or authority over minors. Lastly, it must strike the DNA collection fee and VPA from Fareed's judgment and sentence.[8]

---

[6] Formerly, RCW 7.68.035(1)(a) mandated a $500 victim penalty assessment for all adults found guilty in superior court of a crime. *State v. Mathers*, 193 Wn. App. 913, 918, 376 P.3d 1163 (2016). In 2023, our legislature amended RCW 7.68.035 to state that "[t]he court shall not impose the penalty assessment under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3)." LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(4). Further, courts are required to waive VPAs imposed prior to the 2023 amendments, on the offender's motion. *Id.*; RCW 7.68.035(5)(b).

[7] Alongside amendments to victim penalty assessments, the legislature also amended statutes governing DNA collection fees, eliminating the fee for all defendants. LAWS OF 2023, ch. 449, § 4. Further, courts are required to waive any DNA collection fee imposed prior to the 2023 amendments, on the offender's motion. *Id.*; RCW 43.43.7541(2).

[8] Before briefing was submitted in this appeal, in December 2024, and again months afterward, in March 2025, Fareed filed pro se motions arguing ineffective assistance of appellate counsel. He asserted his attorney refused to raise a federal constitutional claim he sought to make, and before oral argument, we

WE CONCUR:

Díaz, J.

_____

Mann, J.

---

granted a motion filed by his attorney for this court to address Fareed's request to discharge or substitute him. In an April 2, 2025 ruling, we denied Fareed's request to strike his briefing and discharge or substitute his appellate counsel, because we explained he does not have the constitutional right to select that counsel or direct their legal strategy. After oral argument, in mid-April, Fareed filed another motion making constitutional claims and objecting to our April 2, 2025 ruling. In all, those requests remaining from his motions seek additional briefing as well as a hearing to raise further evidence relating to his desired claims. In response, we hold that Fareed has not demonstrated he is entitled to further relief, as his motions represent untimely statements of additional grounds for review and concern matters outside the record on direct appeal for which the appropriate instrument is a personal restraint petition. *See* RAP 10.10(d) (requiring a statement of additional grounds (SAG) to be filed "*within 35 days after* the filing of the brief filed by the defendant's counsel") (emphasis added); RAP 10.10(c) (stating SAGs may only refer to documents contained in the record on review); *State v. Calvin*, 176 Wn. App. 1, 26, 316 P.3d 496 (2013) (issues that involve facts or evidence not in the record are properly raised through a personal restraint petition, not a statement of additional grounds).